UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO DEL CASTILLO, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>COMMUNITY CHILD CARE COUNCIL<br>OF SANTA CLARA COUNTY, INC., et al.,<br><br>             Defendants. | Case No.17-cv-07243-SVK<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 68, 76, 94, 98, 102 |

## I.    INTRODUCTION

On December 21, 2017, Plaintiffs Mario Del Castillo, Puthea Chea, and Michael Rasche, (together, "Plaintiffs") filed a putative class action alleging claims under the Employee Reitrement Income Security Act ("ERISA"). ECF 1. On February 16, 2018, Defendant Life Insurance Company of the Southwest ("LSW") moved to dismiss Plaintiffs' complaint. ECF 68. On February 20, 2018, Defendant Mary Chacon ("Chacon") moved to dismiss Plaintiffs' state law claims. ECF 76. On March 7, 2018, Defendant Alfredo Villasenor ("Villasenor") moved to dismiss Plaintiffs' claims against him. ECF 94. On March 9, 2018, Defendant Kevin Logan ("Logan") moved to dismiss claims against him, largely joining in arguments made by LSW. ECF 98. On March 16, 2018, Board of trustees of Community Child Care Council of Santa Clara County, Inc. ("4Cs Board of Trustees"), Community Child Care Council of Santa Clara County, Inc. ("4Cs"), Julienne La Fitte, Clarence Madrilejos, James McDaniel, Ben Menor, and Xiaoyan Xu moved to dismiss Plaintiffs' complaint, also joining in arguments made by LSW, Chacon, Villasenor, and Logan. ECF 102. On April 24, 2018, the Court heard oral arguments on the Defendants' motions. After reviewing the parties' submissions and hearing argument, the Court grants Defendants' motions to dismiss for the reasons detailed below.

## II.   BACKGROUND

### a.  The Parties

Plaintiffs are three current or former employees of Defendant 4Cs.  ECF 1 at ¶¶ 4-6.  4Cs is a non-profit that operates a Head Start program in Santa Clara County.  ECF 1 at ¶ 8; ECF 102 at 5.  4Cs is operated by Defendant 4Cs Board of Trustees.  ECF 1 at ¶ 8.  Defendants Ben Menor, Xiaoyan Xu, Clarence Madrilejos, James McDaniel, Julienne La Fitte, Jamie Gallardo, Connie Jimenez, Maria Reyes and Faye Sears are now, and/or have been members of the 4Cs Board of Trustees.  ECF 1 at ¶ 9.  From 1987 to approximately August 2017, Defendant Villasenor was the Executive Director of 4Cs.  ECF 1 at ¶ 12.

Beginning in or about 1987, Defendant 4Cs Board of Trustees has been the plan sponsor and plan administrator of the 4Cs Plans, consisting of (1) a "non-qualified" deferred compensation plan, established pursuant to 26 U.S.C. § 409A et seq., (2) a defined contribution plan, and (3) a profit sharing plan.  ECF 1 at ¶ 10.  Plaintiffs have not properly named the 4Cs Plans as a defendant.  The 4Cs Plans do not appear in the caption of the complaint, have not been served with the complaint, and have not appeared in this action.  Fed. R. Civ. P. 4, 10.[1]

Plaintiffs allege that Logan Group Securities have acted and continue to act as investment advisors and brokers to the 4Cs Plans.  ECF 1 at ¶¶ 14, 16.  Defendant Kevin Logan was and is an officer of Logan Group Securities.  ECF 1 at ¶ 15.  Defendant Mary Chacon, as a representative of Defendant Cetera Financial Group, has acted and continues to act as an investment advisor and broker to some or all of the 4Cs Plans.  ECF 1 at ¶ 17.

Defendant LSW is an insurer of the life annuity contracts that 4Cs purchased for Plaintiffs.  ECF 1 at ¶ 18.  Defendant First Allied Retirement Services, Inc. ("ARS, Inc.") has acted and continues to act as an administrator to the 4Cs Plans.  ECF 1 at ¶ 19.  Defendant Unger is an officer of ARS, Inc.  ECF 1 at ¶ 20.

---

[1] Even though the complaint states "Defendant 4Cs Plans is named as an individual Defendant in this action pursuant to Rule 19(a) of the Federal Rules of Civil Procedure," (ECF 1 at ¶ 11) and refers to the 4Cs Plans in the subheadings to the claims for relief, these references, by themselves, do not make the 4Cs Plans a defendant.

### b. Allegations

Beginning in approximately 1987, 4Cs began offering pension benefits to its employees ("4Cs Plans"). ECF 1 at ¶ 10. Plaintiffs are participants in the 4Cs Plans. ECF 1 at ¶¶ 4-6. Plaintiffs allege that at a time unknown, but prior to 2003, 4Cs and its Board began converting Plaintiffs' vested retirement account balances into life annuity contracts underwritten and sold by LSW. ECF 1 at ¶ 23. Plaintiffs allege that 4Cs management personnel presented them and other employees with documents that "purported to be enrollment applications for the 4Cs retirement plans," but "in reality . . . were binding contracts" whereby participants "unknowingly agreed to convert" vested balances into "highly restricted and financially imprudent life annuity" contracts. ECF 1 at ¶ 37. Plaintiffs allege that this transfer was improper because Plaintiffs were misinformed about what they were signing (*see*, *e.g.*, ECF 1 at ¶¶ 33–36), Plaintiffs were not informed about "restrictions" on the LSW Annuities (*see*, *e.g.*, ECF 1 at ¶¶ 41–43), ERISA prohibits certain provisions in the LSW Annuities (*see*, *e.g.*, ECF 1 at ¶¶ 80–83, 89–90), the LSW Annuities were imprudent investments (*see*, *e.g.*, ECF 1 at ¶¶ 97–98), and the purchase of the LSW Annuities constituted prohibited transactions under ERISA (*see*, *e.g.*, ECF 1 at ¶¶ 104–106).

### i. Applications for Annuities

Each Plaintiff filled out and signed a two-page form entitled "Application for Annuity." ECF 69, Request for Judicial Notice ("RJN"), Ex. A–C (the "Applications").[2] Plaintiffs Del Castillo and Rasche signed and dated their Applications on April 3, 2003. ECF 69-1 at 3, 21. Plaintiff Chea signed and dated his Application on December 6, 2012. ECF 69-1 at 18. Each Application contains twelve Sections. *Id.* Plaintiffs Rasche and Del Castillo's Applications indicate that they were applying for the "SecurePlus Platinum Flexible Equity-Indexed and Declared Interest Annuity" Plan (ECF 69-1 at 2 § IV, 20 § IV), and Plaintiff Chea's Application indicates that Chea applied for the "SecurePlus Platinum Plan" (ECF 69-1 at 17 § IV). Each

---

[2] The Applications were submitted as part of Defendant LSW's Request for Judicial Notice. ECF 69. While the Applications are not subject to judicial notice, the Court may consider the Applications because their authenticity is not contested (*see* ECF 91 at 14) and Plaintiffs "necessarily rely" on the Applications in the complaint. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)(citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998)); *Thomas v. Bostwick*, No. 13-CV-02544-JCS, 2013 WL 5289952, at *2 (N.D. Cal. Sept. 19, 2013)

Application indicates that premiums are payable by "Salary Reduction" on a "Monthly" basis. ECF 69-1 at 2 § III, 20 § III, 17 § III.  In the Disclosure Information section where each Plaintiff signed and dated the Application, it states, "I have received a copy of the disclosure material and understand that the results shown, other than the guaranteed minimum values, are not guarantees, promises or warranties."  ECF 69-1 at 3 § XII, 18 § XII, 21 § XII.

### ii.   SecurePlus Platinum Disclosure Material

Plaintiffs were also provided disclosure materials with their Applications.[3]  Plaintiffs Del Castillo and Rasche signed and/or initialed pages of the SecurePlus Platinum Summary/Application provided by LSW (ECF 69-1 at 4-9, 22-27), and Plaintiff Chea was given a SecurePlus Platinum Disclosure/Application form with the application (ECF 69-5 at 11-15) (the "Summary Forms").  These Summary Forms disclosed, among other things:

• "SecurePlus Platinum is an Equity-Indexed and Declared Interest Rate Annuity" that it is a "fixed annuity with certain important insurance features . . ."

• " If you are the Annuitant and you die while this annuity is in force, LSW will pay the greater of the Accumulation Value or the Policy Value (these are described later) to your Beneficiary as a Death Benefit and will waive any remaining Withdrawal Charges."

• "Beginning in the second Policy Year and in each Policy Year thereafter, you may withdraw up to 10% of your annuity's Accumulation Value without a Withdrawal Charge (Free Withdrawal Amount)." (Emphasis in original.)

• There "are no Withdrawal Charges after the 15th Policy Year," but "Withdrawal Charges are applied as a percentage of the amount withdrawn in excess of the available Free Withdrawal Amount." Withdrawal Charges are:

| TABLE 1 WITHDRAWAL CHARGES ARE A PERCENTAGE OF THE ACCUMULATION VALUE | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Policy Year** 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16+ |
| **Withdrawal Charge %** 14 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 0 |

---

[3] *See surpa* at footnote 1.

• "You have a right to a complete refund of your total premium payments at any time within 30 days of receiving your annuity Policy. To exercise this right, you must return your Policy with a written request for a refund."

### c. Procedural Posture

#### i. The Complaint

Plaintiffs filed this action on December 21, 2017, naming as Defendants 4Cs, the 4Cs Board of Trustees, Julienne La Fitte, Clarence Madrilejos, James McDaniel, Ben Menor, Xiaoyan Xu, Jaime Gallardo, Connie Jiminez, Maria Reyes, Faye Sears, Villa Senor, Robert C. Unger, Logan, Logan Group Securities, First Allied Retirement Services, Mary Chacon, Cetera Financial Group, and LSW.  On January 4, 2018, Plaintiffs consented to the jurisdiction of the undersigned magistrate judge.  ECF 36.  On February 2, 2018, Plaintiffs voluntarily dismissed Defendant Cetera Financial Group.  ECF 55.  On May 4, 2018, Plaintiffs voluntarily dismissed Defendants Maria Reyes, Connie Jiminez, and Logan Group Securities.  ECF 130, 131, 132.  All of the remaining Defendants have consented to the jurisdiction of the undersigned magistrate judge.  ECF 51, 75, 87, 95, 99, 128, 129.

Plaintiffs' complaint alleges nine causes of actions.  The first six causes of action arise out of ERISA.  The final three causes of action are state law claims.[4]

Plaintiffs' Claim One alleges a violation of ERISA § 103, 29 U.S.C. § 1023 against Defendants 4Cs Plans, 4Cs Board of Trustees, and Villasenor.  Plaintiffs seek civil penalties under ERISA § 502(c)(1) based on the alleged failure to file the correct 5500 forms with the Department of Labor as ERISA § 103 requires.

Plaintiffs' Claim Two alleges violation of ERISA §§ 101-105, 29 U.S.C. § 1021 against Defendants 4Cs Plans, 4C Board of Trustees, Villasenor, Unger, ARS, Inc., and LSW.  Plaintiffs seek civil penalties under ERISA § 502(c)(1) based on the alleged failure to provide documents to

---

[4] Plaintiffs misnumber the causes of actions in the complaint.  The complaint contains two "Fourth Claim[s] for Relief."  *See* ECF 1 at 21:20, 23:6.  For purposes of this order, the Court will refer to the claims according to their proper order, with a parenthetical reference to the number of the claim in the complaint (e.g., Claim Six (labeled Five)).

Plaintiffs both at certain times as required by the statute and upon request by Plaintiffs.

Plaintiffs' Claim Three alleges violations of ERISA §§ 202-203, 29 U.S.C. § 1052-1053 against Defendants 4Cs Plans, 4C Board of Trustees, Villasenor, and LSW.  Plaintiffs seek declaratory relief for Defendants' alleged failure to provide a plan with the minimum participation standards as required by ERISA.

Plaintiffs' Claim Four alleges violations of ERISA § 206(d), 29 U.S.C. § 1056(d) against Defendants 4Cs Plans, 4C Board of Trustees, and LSW.  Plaintiffs allege that by using vested retirement balances to purchase annuities, Defendants violated ERISA § 206(d), which prohibits "alienation" of benefits.

Plaintiffs' Claim Five (labeled Four) alleges violations of ERISA § 404, 29 U.S.C. § 1104 against Defendants 4Cs Plans, 4C Board of Trustees, Logan, LSW, and Chacon.  Plaintiffs allege that Defendants breached their fiduciary obligations by failing to provide plan documents and by allowing vested retirement account balances to be converted into life annuity contracts that allow for an excessive degree of investment risk and lack reasonable investment diversification.  ECF 1 at ¶¶ 95-101.

Plaintiffs' Claim Six (labeled Five) alleges violations of ERISA § 406, 29 U.S.C. § 1106 against Defendants Logan, and LSW.  Plaintiffs allege that Defendants breached their fiduciary duties by engaging in or permitting prohibited financial transactions.  ECF 1 at ¶¶ 102-110.

Plaintiffs' Claim Seven (labeled Six) alleges a state law claim for breach of contract against Defendants 4Cs, 4Cs Board of Trustees, 4Cs Plans, Logan, and Chacon.  Plaintiffs claim that Plaintiffs and Defendants entered into a contract wherein Defendants agreed to provide Plaintiffs with a retirement benefit and that Defendants breached that contract by using contributions to the Plans to pay compensation to other Defendants.  ECF 1 at ¶¶ 111-119.

Plaintiffs' Claim Eight (labeled Seven) alleges a state law claim for fraud in the inducement, in concealment and intentional deceit against Defendants 4Cs, 4Cs Board of Trustees, 4Cs Plans, Villasenor, Logan, LSW, and Chacon.  Plaintiffs claim that Defendants engaged in acts of deceit by encouraging Plaintiffs to sign documents which purported to be "applications" but were in fact binding life annuity contracts.  ECF 1 at ¶¶ 120-125.

Plaintiffs' Claim Nine (labeled Eight) alleges a state law claim for conversion against Defendants 4Cs Plans, Logan, LSW, and Chacon. Plaintiffs claim that Defendants exercised unlawful dominion and control over a sum of money consisting of retirement contributions promised to Plaintiffs. ECF 1 at ¶¶ 126-131.

### ii. Defendants' Motions to Dismiss

Defendants ARS, Inc. and Unger filed an answer on February 20, 2018. ECF 73. The remaining Defendants have filed five motions to dismiss on the grounds discussed below.

**LSW Motion to Dismiss (ECF 68)**

LSW moves to dismiss the following claims on the following grounds:

- Statute of Limitations: LSW argues that Claims Two, Three, Four, Five (labeled Four), and Six (labeled Five) are barred by the statute of limitations provided for in ERISA.

- Preemption: LSW argues that Plaintiffs' state law claims against LSW, Claims Eight (labeled Seven) and Nine (labeled Eight), are preempted by ERISA.

- Administrator: LSW argues that Claim Two must be dismissed because LSW is not an administrator and therefore cannot be liable.

- Fiduciary: LSW argues that Claims Five (labeled Four) and Six (labeled Five) must be dismissed because LSW is not a fiduciary and therefore cannot be liable under those claims.

- Failure to State a Claim: LSW also argues that Claims Three, Four, Eight (labeled Seven), and Nine (labeled Eight) must be dismissed because they fail to state a claim.

**Chacon Motion to Dismiss (ECF 76)**

- Preemption: Chacon moves to dismiss Plaintiffs' state law claims against Chacon, Claims Seven (labeled Six), Eight (labeled Seven), and Nine (labeled Eight), because they are preempted by ERISA.

- Failure to State a Claim: Chacon moves to dismiss Claim Eight (labeled Seven) because it fails to state a claim.

**Villasenor Motion to Dismiss (ECF 94)**

Villasenor moves to dismiss the following claims on the following grounds:

- Statute of Limitations: Villasenor argues that Claims One and Two are barred by the applicable state statute of limitations.

- Administrator: Villasenor argues that Claim Two must be dismissed because Villasenor is not a plan administrator and therefore cannot be liable.

- Preemption: Villasenor argues that the state law cause of action against him, Claim Eight (labeled Seven), must be dismissed because it is preempted by ERISA.

- Failure to State a Claim: Villasenor argues that Claim Three must be dismissed for failure to state a claim.

**Logan Motion to Dismiss (ECF 98)**

Logan moves to dismiss the following claims on the following grounds:

- Statute of Limitations: Logan argues that Claims Five (labeled Four) and Six (labeled Five) are barred by the statute of limitations provided for in ERISA.

- Preemption: Logan moves to dismiss Plaintiffs' state law claims against Logan, Claims Seven (labeled Six), Eight (labeled Seven), and Nine (labeled Eight), because they are preempted by ERISA.

- Fiduciary: Logan argues that Claims Five (labeled Four) and Six (labeled Five) must be dismissed because Logan is not a fiduciary and therefore cannot be liable under those claims.

**4Cs Motion to Dismiss (ECF 102):**

Defendants 4Cs,[5] 4Cs Board of Trustees, Ben Menor, Xiaoyan Xu, Clarence Madrilejos, James Mcdaniel, and Julienne LaFitte move to dismiss the following claims on the following grounds:

- Statute of Limitations: Defendants 4Cs and 4Cs Board of trustees join in LSW's

---

[5] Defendant 4Cs moves to dismiss as if it had been properly named in certain claims for relief, and the Court has accepted and herein rules on the 4Cs motion. Because 4Cs Plans is not a defendant, it has not moved to dismiss or otherwise responded to the complaint. *See supra* section II.a. n. 1.

8

motion to dismiss Claims One, Two, Three, Four, Five (labeled Four), and Six
(labeled Five) because they are barred by the statute of limitations.

- Failure to State a Claim:  Defendants 4Cs and 4Cs Board of Trustees move to
  dismiss Claims One, Three, Four, and Six, Seven (labeled Six), Eight (labeled
  Seven), and Nine (labeled Eight) for failure to state a claim.
- Preemption:  Defendants 4Cs and 4Cs Board of Trustees move to dismiss
  Plaintiffs' state law claims, Claims Seven (labeled Six), Eight (labeled Seven), and
  Nine (labeled Eight), because they are preempted by ERISA.
- Volunteer Protection Act:  Ben Menor, Xiaoyan Xu, Clarence Madrilejos, James
  Mcdaniel, and Julienne LaFitte move to dismiss claims against them because they
  were acting as volunteers and are therefore shielded from liability.

For the reasons discussed herein, the Court grants Defendants' motions in part without
leave to amend and in part with leave to amend.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it
fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to
dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard
requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant
has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although courts do not
require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 570, a plaintiff must provide
"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
will not do." *Id.* at 555.  Rather, the plaintiff must allege facts sufficient to "raise a right to relief
above the speculative level." *Id.*

### IV.    DISCUSSION

#### a.    Statute of Limitations

ERISA is a statutory framework set forth in ERISA §§ 1-4402, 29 U.S.C. §§ 1001-1461
that seeks "to ensure that employees will not be left empty-handed" by imposing requirements on

retirement plans and fiduciary duties on those responsible for management of retirement plans. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). ERISA provides for a statute of limitations period for those claims relating to fiduciary duties. 29 U.S.C. § 1113.

Section 1113 provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

29 U.S.C. § 1113. When considering the statute of limitations for claims relating to breach of fiduciary duties, the timeliness analysis hinges on when the alleged breach or violation occurred and when the plaintiff had actual knowledge of the breach or violation. *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 550 (9th Cir. 1990).

The above ERISA statute of limitations, however, does not apply to all subsections of ERISA. For example, 29 U.S.C. § 1132, which governs relief available under ERISA, does not have a statutorily provided limitations period. *Stone v. Travelers Corp.*, 58 F.3d 434, 438 (9th Cir. 1995). For such subsections, courts must apply the most analogous statute of limitations under state law. *Id.*

As discussed below, Plaintiffs seek relief under ERISA § 502, 29 U.S.C. § 1132 for Claims One and Two, and therefore the ERISA statute of limitations does not apply. Claim One is barred by the analogous California statute of limitations and is dismissed without leave to amend. Claim Two is barred in part by the analogous California statute of limitations and is dismissed without leave to amend in part. Claims Three and Four are governed by the ERISA statute of limitations and barred pursuant to § 1113 and are dismissed without leave to amend.

//

//

Plaintiffs allege Defendants 4Cs Plans, 4Cs Board of Trustees, and Villasenor violated ERISA § 103, 29 U.S.C. § 1023, by filing the incorrect forms with the Department of Labor between 2012-2014. ECF 1 at ¶¶ 60-65.[6] Plaintiffs claim that defendants are liable under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) because Defendants' failure to file the proper form has prevented Plaintiffs from ascertaining relevant information about the overall financial condition of the 4Cs Plans. Plaintiffs claim damages from October 15, 2016 "continuing through the present."[7]

ERISA § 502, 29 U.S.C. § 1132 does not provide its own statute of limitations. Therefore, the Court must apply the most analogous statute of limitations under state law. *Stone*, 58 F.3d at 438. California Code of Civil Procedure section 340(1) provides a one-year limitation for an "action upon a statute for a penalty or forfeiture, when the action is given to an individual, or to an individual and the state." California Code of Civil Procedure section 338(a) provides a three-year limitation for an "action upon a liability created by statute, other than a penalty or forfeiture." To determine which of these statutes to apply, the Ninth Circuit has provided that the relevant question is whether the wrong is "more private" or "more public." *Stone*, 58 F.3d at 438-39. A plaintiff who sues for a remedy that is payable to him or her for his or her injury seeks to remedy a wrong that is "more private." *Id.* at 439. A plaintiff bringing suit as a "private attorney general" to enforce a general policy seeks to right a wrong that is "more public." *Id.* at 439.

Under Claim One, Plaintiffs argue that they were harmed by receiving incomplete information in response to their request to Defendants because Defendants did not provide the

---

[6] Defendant 4Cs requests judicial notice of Early Heard Start Services Snapshot 2017 for 4Cs available on the U.S. Department of Health & Human Services's website and Forms 5500 filed by 4Cs profit sharing plan for the years 2010 and 2011. ECF 102-1. Plaintiffs do not oppose the request or otherwise contend the documents are inaccurate. Plaintiffs rely on the Forms 5500 in both their complaint and opposition. *See* ECF 1 at ¶¶ 62-65; ECF 114 at 12-13. Therefore 4Cs's request for judicial notice is granted. *See Perkins v. LinkedIn Corp.*, 53 F.Supp.3d 1190, 1204–06 (N.D. Cal. 2014) (taking judicial notice of publicly accessible websites); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*., 99 F.Supp.3d 1110, 1126 (C.D. Cal. 2015) (taking judicial notice of Form 5500 filings).

[7] Plaintiffs allege the union requested information on September 25, 2016 and received a response October 25, 2016. ECF 1 at ¶ 46. Although not clear from the Complaint, it appears that the October 25, 2016 response date is the basis for the damages period.

United States District Court
Northern District of California

correct forms to the Department of Labor in first instance. ECF 105 at 4-5.[8] While Plaintiffs argue that their claimed harm is seemingly "more private," because they are harmed on an individual level, the ERISA section to which Claim One is directed as pled requires a plan to submit an annual report to the Department of Labor, not to plan beneficiaries or participants. *Compare* ERISA § 103, 29 U.S.C. § 1023 (section alleged to be violated in Claim One) *with* ERISA § 104, 29 U.S.C. §§ 1024 (provisions requiring certain documents be provided to participants and beneficiaries, under which Claim Two is brought). Therefore, because Claim One is pled as a violation of ERISA § 103, the Court concludes that Claim One is directed at a wrong that is "more public." *See Stone*, 58 F.3d at 439. Accordingly, the Court applies the one year statute of limitation pursuant to California Code of Civil Procedure section 340(1).

Plaintiffs filed their complaint on December 21, 2017. ECF 1. The complaint alleges the last incorrect filing that could have violated ERISA § 103, 29 U.S.C. § 1023, occurred on June 30, 2014, over three years prior to the date Plaintiffs filed their complaint. ECF ¶ 63. Therefore, Claim One is time-barred and dismissed without leave to amend.

### ii. Claim Two: Violation of ERISA §§ 101-105, 29 U.S.C. § 1021 Against Defendants 4Cs Plans (*sic*), 4C Board of Trustees, Villasenor, Unger, ARS, Inc., and LSW

Plaintiffs' second claim for relief is brought pursuant to ERISA §§ 101-105, 29 U.S.C. §§ 1021-1025. These sections require the administrator of employee benefit plans to provide each participant and beneficiary with certain documents, including summary plan descriptions, financial information, benefit accrual, and a statement of rights, at varying time periods. ERISA § 104(b)(4) requires a plan administrator to provide certain documents on request. Similar to Claim One, Plaintiffs seek damages pursuant to ERISA § 502(c)(1). ECF 1 at ¶ 77. Thus, to determine which California statute of limitations to apply, the Court is again faced with the question of whether the wrong is "more private" or "more public." *See Stone*, 58 F.3d at 438-39.

Here, the relevant ERISA sections require that documents be provided to individuals as

---

[8] Plaintiffs argue that the harm stems from a violation of ERISA § 104(b), 29 U.S.C. § 1024(b), not ERISA § 103, 29 U.S.C. § 1023. ECF 105 at 4-5. However, that is not how the claim is pled in the complaint. ECF 1 at ¶¶ 61-65.

opposed to the Department of Labor. Therefore, the Court concludes that the wrong is "more private." As such, the Court applies California Code of Civil Procedure section 338(a), under which the statute of limitations is three years.

The complaint was filed December 21, 2017. As a result, for claims relating to documents that ERISA requires an administrator to provide annually or quarterly, any claims relating to violations that occurred after December 21, 2014 are timely. *See, e.g.*, ERISA § 103(a)(1)(B).[9]

Plaintiffs' claim that Defendants violated ERISA § 104(b)(4) by failing to provide documents requested on September 25, 2016, June 29, 2017, and September 12, 2017. These claims are timely because the alleged violations occurred within three years of December 21, 2017, the date Plaintiffs filed their complaint.[10]

### iii. Claim Three:  Violation of ERISA §§ 202-203, 29 U.S.C. § 1052-1053 Against Defendants 4Cs Plans (*sic*), 4C Board of Trustees, Villasenor, and LSW

In their third claim for relief, Plaintiffs allege that Defendants 4Cs Plans, 4C Board of Trustees, Villasenor, and LSW violated ERISA §§ 202-203, 29 U.S.C. §§ 1052-1053 by imposing improper conditions of participation and improper vesting periods. Specifically, Plaintiffs argue that the opportunity to "participate" in the plan must include the right to fully "vest" in the benefits payable by the plan within specified periods of time. ECF 91 at 20. Plaintiffs further argue that the withdrawal charges imposed on withdrawals taken within 15 years of the purchase of the annuities improperly prevent a portion of the 4Cs contribution to the plans to vest and therefore violate ERISA §§ 202-203. *Id*. In other words, the withdrawal charges prevent vesting, which in turn impedes participation. Plaintiffs seek declaratory relief. ECF 1 at ¶ 85.

Unlike the ERISA sections governing the relief sought in Claims One and Two, ERISA §§ 202-203, 29 U.S.C. §§ 1052-1053, are subject to the ERISA statutory limitations period as they

---

[9] Even though Plaintiffs may have claims pursuant to these sections of ERISA that are timely, as pled, Plaintiffs have failed to state a claim. Fed. R. Civ. P. 12(b)(6). Plaintiffs do not allege which documents were not received and when such documents were not received. On amendment, Plaintiffs must allege when, within the three years prior to December 21, 2017, appropriate defendants failed to comply with each section of ERISA alleged in Claim Two such that the Defendants have adequate notice of the claim.

[10] Claim Two is subject to additional challenges addressed below. *See infra* section IV.c.

United States District Court
Northern District of California

are included in the subchapter to which ERISA § 413, 29 U.S.C. § 1113 applies. 29 U.S.C.

§ 1113. Thus, to determine when the limitations period began to run, the Court must analyze

when the alleged breach or violation occurred and when the plaintiff had actual knowledge of the

breach or violation to determine the underlying violation upon which Plaintiffs' claim is founded.

*See id.*; *supra* section IV.a. Plaintiffs do not allege that they were actually denied benefits because

of the alleged participation period or that they have suffered losses as a result of the vesting

periods. Instead, Plaintiffs allege that the terms in the Annuity Applications themselves constitute

the violation. See ECF 1 at ¶¶ 81-83. Thus the violation occurred upon the adoption of the terms.

Del Castillo and Rasche signed their LSW Annuity Applications, which contained the

allegedly unlawful terms, on April 3, 2003. Chea signed her LSW annuity application, which

contained the allegedly unlawful terms, on December 6, 2012. Each date represents the date the

contract was created and therefore the day the alleged violation occurred as to each plaintiff. *See*

*Ziegler*, 916 F.2d at 551.

The second step of the analysis under ERISA requires determining "actual knowledge" of

the breach or violation. 29 U.S.C. § 1113. Here, the dates when each Plaintiff had actual

knowledge are the same as the dates of the alleged violations. The Applications state that

withdrawal charges will be charged based on the policy year of the withdrawal. *See*, *e.g.*, ECF 69-

1 at 8. The pages of Del Castillo's and Rasche's Applications that contain the withdrawal charge

disclosures are initialed by the respective Plaintiff. ECF 69-1 at 8, 26. In Chea's Application, the

signature page contains the withdrawal charge. ECF 69-1 at 15. All three Plaintiffs signed their

Applications. ECF 69-1 at 9, 15, 27. These Applications, containing the term that allegedly

violates ERISA's participation requirements, gave plaintiffs actual knowledge of the participation

and vesting provisions that are the basis of their claims. *See Lorenz v. Safeway*, 241 F.Supp.3d

1005, 1016 (N.D. Cal. Mar. 13, 2017) (plaintiff had actual knowledge of an ERISA violation when

a disclosure notice containing the facts that gave rise to plaintiff's claim was made available to

plaintiff, regardless of whether plaintiff actually read the notice).

Based on the date that Plaintiffs had actual knowledge, 29 U.S.C. § 1113 bars any claims

brought after the following dates: For Plaintiff Del Castillo, any claims after April 3, 2006 (three

United States District Court
Northern District of California

years after the date of signature);  for Plaintiff Rasche, any claims after April 3, 2006 (three years after the date of signature); and for Plaintiff Chea, any claims after December 6, 2015 (three years after the date of signature).  Plaintiffs filed their complaint on December 21, 2017.  ECF 1.  Therefore, Plaintiffs' third claim is time-barred and dismissed without leave to amend.[11]

### iv. Claim Four:  Violation of ERISA § 206(d), 29 U.S.C. § 1056(d) Against Defendants 4Cs Plans (*sic*), 4C Board of Trustees, and LSW

In their Fourth Claim for Relief, Plaintiffs allege that Defendants 4Cs Plans, 4C Board of Trustees, and LSW violated ERISA § 206(d), 29 U.S.C. § 1056(d), which provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."  Section 206(d), 29 U.S.C. § 1056(d) is governed by the ERISA-provided statute of limitations.  29 U.S.C. § 1113.  Therefore, the Court must again assess when the violation occurred and when Plaintiffs had actual knowledge of the violation.

Similar to Claim Three, Plaintiffs allege that the contract provision that "limits the right to withdraw funds by imposing a 10% fee on any amount withdrawn within 12 years following the inception of the contract," is an unlawful alienation of benefits under ERISA § 206(d), 29 U.S.C. § 1056(d).  Thus, because the violation arises from the contract term, the analysis from above applies equally here.  The alleged violation occurred with the adoption of the withdrawal charge term of the contract.  Plaintiffs had actual knowledge of the violation when they signed the contract.  Based on the date that each Plaintiff signed his or her contract, Plaintiff's Fourth Claim for Relief is time-barred and dismissed without leave to amend.  *See supra* section IV.a.iii.

### b. ERISA Preemption of State Law Claims

Plaintiffs' claims Seven (labeled Six), Eight (labeled Seven), and Nine (labeled Eight), are state law claims for breach of contract, fraud in the inducement, and conversion.  ECF 1 at 24, 27, 29.

A state law claim is preempted by ERISA, and therefore must be dismissed, if it has a

---

[11] Defendants make other arguments regarding the sufficiency of the allegations in Plaintiffs' third claim for relief.  *See*, *e.g.*, ECF 68 at 23-24.  Because the Court concludes the claim is time-barred, the Court does not reach these arguments.

"connection with" or a "reference to" an ERISA-governed benefit plan. *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739 (1985); *see Wise v. Verizon Commc'ns., Inc.*, 600 F.3d 1180, 1190-91 (2010). Stated another way, where "the existence of [an ERISA] plan is a critical factor in establishing liability" under a state cause of action, the state law claim is preempted. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S.133, 136, 139–40 (1990). ERISA's preemption provision functions "even when the state action purport[s] to authorize a remedy unavailable under the federal provision." *Id.* at 144 (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 55 (1987)). ERISA preemption is not limited to state statutes and rules; common law causes of action that "relate to" ERISA plans are also preempted. *Pilot Life,* 481 U.S. at 47–48. A plaintiff's state law claim that merely seeks an alternative enforcement mechanism of an ERISA provision is preempted. *Dishman v. UNUM Life Ins. Co. of Am.,* 269 F.3d 974, 983 (9th Cir. 2001). The Ninth Circuit has applied a "but for" standard to assess the relationship between the harm alleged and the ERISA-governed plan for purposes of determining whether a plaintiff is seeking such an alternate enforcement mechanism. *Id.*

In *Wise v. Verizon Communications*, the Ninth Circuit affirmed the dismissal of the plaintiff's state law claims against her employer, stating:

> Wise's state law claims are preempted because her complaint necessarily references an ERISA plan. The state law theories of fraud, misrepresentation, and negligence all depend on the existence of an ERISA-covered plan to demonstrate that Wise suffered damages: the loss of insurance benefits. Because Wise must allege the existence of an ERISA plan to state her claims under Washington law, the claims are preempted. . . .

*Wise*, 600 F.3d at 1191.

At oral argument, Plaintiffs attempted to distinguish their claims from those ordinarily preempted by ERISA by arguing that all of the state law claims relate to "pre-plan" behavior by Defendants. Plaintiffs' argument is contradicted by their factual allegations. Plaintiffs allege that beginning "in or about 1987," Defendant 4Cs Board of Trustees has been the plan sponsor and plan administrator of employee benefit plans as defined by ERISA, suggesting the plans have existed since 1987. ECF 1 at ¶ 10. Plaintiffs' state law claims all relate to plan assets, namely in the form of the life annuity contracts signed by Plaintiffs in 2003 and 2012, well after the

establishment of the plans in 1987. Therefore, Plaintiffs claims do not relate to "pre-plan" actions by Defendants.

Even if the actions were "pre-plan," the analysis would not change. Plaintiffs' claims are all of the type ordinarily preempted by ERISA, regardless of whether the conduct occurred before or after the inception of the ERISA plan. Plaintiffs' claims for breach of contract, fraud in the inducement, and conversion depend on the existence of the ERISA plan. As relief for their breach of contract claim and fraud claim, Plaintiffs seek damages based on the value of their "accrued retirement benefit." ECF 1 at ¶¶ 118, 125. In their conversion claim, Plaintiffs seek injunctive relief related to enforcement of the terms and conditions of the life annuity contracts. ECF 1 at ¶¶ 130, 131. As discussed more fully below, all of Plaintiffs' state law claims depend on the existence of an ERISA-covered plan to demonstrate damages and are therefore preempted. *See Wise*, 600 F.3d at 1191. Therefore, Plaintiffs' state law claims are dismissed without leave to amend.

### i. Claim Seven (labeled Six): Breach of Contract

Plaintiff's Claim Seven (labeled Six) is for breach of contract. The contract that Plaintiffs allege that Defendants 4Cs, 4Cs Board of Trustees, 4Cs Plans, Logan, and Chacon breached is a contract "whereby the 4Cs Board of Trustees promised to provide Plaintiffs with a retirement benefit consisting of contributions payable by 4Cs into an account held in the name of each Plaintiff and member of the putative class." ECF 1 at ¶ 112. In other words, the contract is the retirement plan, governed by ERISA. Plaintiffs seek damages in the amount of the "loss in the immediate and long-term value of their accrued retirement benefit." ECF 1 at ¶ 118. The claim relies on the existence of an ERISA plan and seeks damages related to the payment of benefits. Therefore the breach of contract claim "necessarily references an ERISA plan" and is preempted. *Wise*, 600 F.3d at 1191.

### ii. Claim Eight (labeled Seven): Fraud in the inducement

Plaintiff's Claim Eight (labeled Seven) is for fraud in the inducement. Plaintiffs allege that Defendants 4Cs, 4Cs Board of Trustees, 4Cs Plans, and Villasenor engaged in acts of deceit by encouraging Plaintiffs to sign documents "which purported to be 'applications' for participation in

the 4Cs Plans, but, in truth . . . were binding life annuity contracts." ECF 1 at ¶ 121. As to Defendants Logan and LSW, Plaintiffs alleged that these Defendants participated in the "acts of deceit" by accepting the applications and fraudulently concealing the "true marketable value of these life annuity contracts." ECF 1 at ¶ 122. Plaintiffs further allege they have suffered a "significant loss in the immediate and long-term value of their accrued retirement benefit." ECF 1 at ¶ 125.

In addition to the preemption precedent addressed above, the Ninth Circuit also precludes an individual fraud action based on representations about the benefits due. *Olson v. General Dynamics Corp.*, 960 F.2d 1418, 1423 (9th Cir.1991), cert. denied, 504 U.S. 986 (1992); *see also Davidian v. S. Cal. Meat Cutters Union*, 859 F.2d 134, 135 (9th Cir.1988) (claims alleging incorrect description of insurance benefits of ERISA plan preempted). In *Davidian*, the plaintiff alleged that when he was planning to retire, the employee benefit fund gave him an option of continuing to participate and a choice of three benefit plans. *Davidian*, 859 F.2d at 135. A fund employee allegedly did not inform him that one of the benefit plans, the one he ultimately chose, capped medical reimbursements. *Id*. The plaintiff brought a fraud claim, among others. *Id*. The Ninth Circuit affirmed the district court's summary judgment, finding the claims related to the administration of an employee benefit plan and were therefore preempted. *Id*.

As in *Davidian*, Plaintiffs bring a claim for fraud based on alleged misrepresentations regarding the plan assets (i.e. the annuity contracts) and the value of the assets. Under *Davidian*, Plaintiffs' fraud claim is preempted as it relies on the existence of an ERISA plan and seeks remedies related to benefits.

### iii. Claim Nine (labeled claim eight): Conversion

Plaintiff's Claim Nine (labeled Eight) alleges that Defendants 4Cs Plans, Logan, Logan Group Securities, LSW, and Chacon "exercise unlawful dominion or control over an identifiable sum of money consisting of retirement contributions promised to Plaintiffs by the 4Cs Board of Trustees." ECF 1 at ¶ 127. Plaintiffs also allege that LSW "continues to exercise unlawful dominion or control over an identifiable sum of money belonging to Plaintiffs . . . by enforcing the terms of the life annuity contracts." ECF 1 at ¶ 128. Plaintiffs claim they have been financially

harmed by "depriving them with the ability to diversify or re-invest the proceeds," and seek injunctive relief against the enforcement of the terms and conditions of life annuity contracts." ECF 1 at ¶¶ 130, 131.

Once again, Plaintiffs' state law claim relies on the existence of an ERISA plan and the payment of benefits. Without a plan, Plaintiffs would not be entitled to the money they claim Defendants have unlawfully converted. Therefore, Plaintiffs' conversion claim is also preempted.

All three of Plaintiffs' state law claims are preempted and therefore dismissed without leave to amend.

### c. Administrator Liability as to LSW and Villasenor

Plaintiffs' first and second causes of action are for statutory penalties pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1). *See* ECF 1 at ¶¶ 66, 77. LSW and Villasenor move to dismiss because they are not administrators of the plan and therefore cannot be liable under ERISA. The Court agrees and dismisses Claim One and Claim Two as to Villasenor and Claim Two as to LSW without leave to amend.[12]

ERISA defines a plan administrator as:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."

29 U.S.C. § 1002(16)(A).

Pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), an administrator may be liable for refusing to supply requested information. An "administrator" is typically the person or entity designated as such in the documents governing the ERISA plan. ERISA § 3(16), 29 U.S.C. § 1002(16).

The Ninth Circuit has "effectively closed the door" on the *de facto* administrator theory, even where an insurer takes on a substantial role in operating a plan. *Turnipseed v. Educ. Mgmt. LLC's Emp. Disability Plan,* Case No. 09–cv–03811 MHP, 2010 WL 140384, at *5 (N.D. Cal.

---

[12] As explained above, Claim Two is partially dismissed as time-barred. *See supra* section IV.a.ii.

Jan. 13, 2010) (citing *Ford v. MCI Commc'ns Corp. Health & Welfare Plan,* 399 F.3d 1076, 1081–82 (9th Cir.2005) *overruled on other grounds by Cyr v. Reliance Standard Life Ins. Co.,* 642 F.3d 1202 (9th Cir.2011)) ("Liberty cannot be considered a *de facto* administrator because plaintiff has not alleged that Liberty's role in the Plan was anything greater than that of a standard third-party insurer with discretion to determine eligibility for benefits . . .. Even if plaintiff had alleged more, it is not clear that such a claim would be cognizable in the Ninth Circuit regardless of Liberty's role in the Plan."); *see also In re WellPoint, Inc. Out–of–Network UCR Rates Litig.,* 865 F.Supp.2d 1002, 1045–46 (C.D.Cal.2011) ("The Ninth Circuit has all but slammed the door on the *de facto* administrator theory advanced by Plaintiffs....").

Plaintiffs' Claims One and Two seek statutory penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) for the alleged failure to provide the correct forms to the Department of Labor pursuant to ERISA § 103, 29 U.S.C. § 1023 and for allegedly failing to provide annual reports to participants and beneficiaries detailing the financial condition of the plan pursuant to ERISA § 103(a)(1)(B), 29 U.SC. § 1023(a)(1)(B). The complaint identifies Defendant 4Cs Board of Trustees as the plan sponsor and plan administrator. ECF 1 at ¶ 10. The complaint also alleges that Villasenor, Chacon, Unger and ARS, Inc. have "acted as a plan administrator." ECF 1 at ¶¶ 12, 17, 19, 20.

### i. Defendant LSW

Plaintiffs do not allege in the complaint that LSW is a plan administrator or acted as a plan administrator. However, in opposition to LSW's motion to dismiss, Plaintiffs argue that LSW is "likely" an administrator because LSW received annuity applications, accepted and processed annuity applications, received phone calls, and answered questions about the terms and conditions of the annuities that had been purchased by Plaintiffs. ECF 91 at 13.

The Court finds that LSW is not a *de facto* administrator. Courts in the Ninth Circuit have typically rejected extending plan administrator liability beyond the specific entity that formally holds that designation. The Court declines to do so here despite Plaintiffs' recent arguments that LSW performed certain functions such as accepting applications and answering questions. The Court finds that those activities are insufficient to subject LSW to liability as a *de facto* plan

administrator in light of the high bar for such a finding in the Ninth Circuit.

### ii. Defendant Villasenor

Plaintiffs argue that they have alleged that Villasenor is a *de facto* plan administrator because he "executed service contracts, filed various annual reports with the Secretary of Labor and conducted various other business activities on behalf of the 4Cs Plans." ECF 105 at 5-6; ECF 1 at ¶ 12.

Plaintiffs argue the *de facto* administrator theory is still viable under *Cyr v. Reliance Standard Life Ins. Co.,* 642 F.3d 1202 (9th Cir.2011) and *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014). Those cases, however, interpret claims for benefits, not statutory penalties, brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B). In those cases, the Ninth Circuit held that where a party seeks recovery of benefits, a defendant may be a *de facto* administrator where the defendant was responsible for the payment of benefits. *Spinedex*, 770 F.3d at 1297-98. The linchpin of the Ninth Circuit's analysis is the initial premise that ERISA § 502(a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B) does not limit the class of defendants that may be sued under that subsection. *Id*.

Plaintiffs' argument fails because unlike ERISA § 502(a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B) at issue in *Cyr* and *Spinedex*, recovery under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) is explicitly limited to recovery of penalties against an administrator. As such, the Court concludes that Villasenor is not a *de facto* administrator and is therefore not subject to liability under Claims One and Two.

Claims One and Two seek relief based on ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1). The Court finds that because LSW and Villasenor are not named or *de facto* administrators, they cannot be liable under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1). Claims One and Two therefore fail to state a claim against Villasenor, and Claim Two fails to state a claim against LSW. As any amendment would be futile, leave to amend is not granted. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1061 (9th Cir.2004) (finding a "district court does not err in denying leave to amend where the amendment would be futile") (quoting *Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991)); *see also Eminence Capital, LLC v. Aspeon, Inc*.,

316 F.3d 1048, 1052 (9th Cir.2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996)).

### d. Fiduciary Liability as to LSW and Logan

Plaintiffs' Claims Five (labeled Four) and Six (labeled Five) seek to hold fiduciaries liable under ERISA. Defendants LSW and Logan move to dismiss these claims arguing they are not fiduciaries. The Court agrees and dismisses LSW and Logan for Claims Five (labeled Four) and Six (labeled Five) with leave to amend.

An employer that forms an ERISA plan is a statutory fiduciary. *See* 29 U.S.C. § 1102(a). A party not named in the plan may become a fiduciary if

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Such non-named fiduciaries are sometimes referred to as "functional" fiduciaries, and plan service providers can under the named circumstances become functional fiduciaries. *See, e.g.*, *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1419–22 (9th Cir. 1997); *Parker v. Bain*, 68 F.3d 1131, 1139–40 (9th Cir. 1995).

To determine whether a party is a fiduciary such that liability should attach, the "threshold question" is whether the party was "performing a fiduciary function when taking the action subject to complaint." *Pegram*, 530 U.S. at 226 (parentheses omitted); *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 840–41 (9th Cir. 2018). In *Santomenno*, plaintiff argued that a third-party administrator was a fiduciary because it exercised authority or control respecting management or disposition of accounts. *Santomenno*, 883 F.3d at 839. The Ninth Circuit Court held that the third-party administrator of the plan was not a fiduciary with respect to the decision to withdraw its fees from the plan's pooled accounts because the fees were fixed by a contractual formula and thus withdrawing them was a "purely ministerial" act. *Id*. at 840. The Court characterized its holding as "narrow[ly]" addressed to the situation where "a service provider's definitively calculable and nondiscretionary compensation is clearly set forth in a contract with the fiduciary-

employer" and the service provider collects its fees "out of plan funds in strict adherence to that contractual term." *Id.* at 841. If, on the other hand, the allegation were that the service provider's "fee were based on self-reported hours worked, or even if [its] withdrawals involved expenses," the Court declared, "this might well be a different case." *Id.*

### i. Defendant LSW

Plaintiffs argue that LSW is a fiduciary because it has exercised custody and control over the 4Cs Plans assets by virtue of accepting payments from 4Cs and the 4Cs Board of Trustees for the purpose of purchasing annuities. Plaintiffs argue that LSW exercises discretionary authority over the plans by assessing and enforcing penalties and withdrawal limitations. ECF 91 at 14 (citing ECF 1 at ¶¶ 19, 39, 41-43). The penalties and withdrawal limitations are terms of the Annuity Applications signed by Plaintiffs. *See*, *e.g.*, ECF 69-1 at 8 (Del Castillo Annuity Application); ECF 1 at ¶¶ 42-43. The only allegation that is not also found in the contract is the allegation that LSW informed Plaintiff Del Castillo that he could only roll over his vested retirement account balance into another product sold by LSW. ECF 1 at ¶ 42.[13]

Any allegation that LSW is a fiduciary because it enforced a term of a contract signed by Plaintiffs fails to establish that LSW is in fact a fiduciary. *See Santomenno*, 883 F.3d at 840. Because Plaintiffs only allege that LSW enforced the terms of the contract to which they agreed, under *Santomenno*, enforcing the terms was purely ministerial and LSW is not a fiduciary.

The only remaining allegation that is not found in a contract that is currently before the Court is LSW's alleged restrictions on rolling over account balances. However, this fact alone does not convert LSW into a fiduciary. Preliminarily, it is unclear to the Court whether such an allegation would rise to the requisite level of discretionary authority or custody and control over the assets to render LSW a fiduciary. Plaintiffs do not cite any authority to support such a conclusion.

However, even if this restriction is not in a contract and did support the conclusion that

---

[13] At oral argument, LSW argued that the roll-over limitations were a part of a second contract entered into by Del Castillo. That contract is not before the Court for purposes of this motion. ECF 125.

LSW is a fiduciary, it does not support the conclusion that LSW is a fiduciary for all purposes. The "threshold question" is not only whether LSW performed a fiduciary duty, but whether LSW was performing a fiduciary duty when taking the action subject to complaint. *Pegram*, 530 U.S. at 226.

Here, Plaintiffs allege two causes of action that implicate LSW's supposed fiduciary duties. ECF 1 at 23, 24. (Claims Five (labeled Four), and Six (labeled Five)). Plaintiffs' Claim Five (labeled Four) claims violations of ERISA § 404, 29 U.S.C. § 1104 by alleging that the Defendants breached their alleged fiduciary duties by failing to establish appropriate plan documents, allowing benefits to be converted to LSW Annuities, and imprudently selecting an investment product that was based on the market performance of the S&P 500 index. ECF 1 at ¶¶ 96–97. All of the described activities are those that would be undertaken by the 4Cs Board of Trustees, [14] not LSW. LSW simply provided a product that the 4Cs Board of Trustees chose to purchase for its retirement plan. *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) ("Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products") (citations omitted); *Santomenno*, 883 F.3d at 838 ("A service provider is plainly not involved in plan management when negotiating its prospective fees or compiling a list of proposed investment options. Rather, at that stage discretionary control over plan management lies . . . with the trustee, who decides whether to agree to the service provider's terms.") (citations and quotations omitted).

Plaintiffs' Claim Six (labeled Five) claims that LSW violated ERISA § 406, 29 U.S.C. § 1106. The only allegation that relates to LSW is the claim that the 4Cs Plans assets were transferred into the sole custody of LSW and retained by LSW. ECF 1 at ¶ 104A. It is unclear how this allegation breaches a fiduciary duty. However, based on the allegations in the complaint, the only manner in which Plaintiff may be able to establish LSW is a fiduciary is through its restriction on rolling over account funds. This restriction does not relate to the alleged violation of section 406(a)(1)(B) of ERISA, 29 U.S.C. § 11069a)(1)(B), which prohibits a fiduciary from

---

[14] Plaintiffs allege that the 4Cs Board of Trustees established the 4Cs Plans and alleges that the 4Cs Board of Trustees is the plan sponsor and administrator. ECF 1 at ¶¶ 1, 10.

lending money to, or extending credit to a party-in-interest. Therefore, LSW is not a fiduciary for purposes of Plaintiffs' Claim Six (labeled Five).

In sum, Plaintiffs have failed to establish that LSW was acting as a fiduciary. All but one of the allegations that Plaintiffs argue support such a conclusion are terms of the annuity contract, and therefore do not establish LSW has the requisite custody, control, or discretionary authority to render it a fiduciary under ERISA. The only remaining allegation that Plaintiffs argue could support LSW's fiduciary status does not relate to any of the sections of ERISA that Plaintiffs allege LSW violated. Therefore, Claims Five (labeled Four) and Six (labeled Five) are dismissed as to LSW with leave to amend.

### ii. Defendant Logan

The complaint contains the following allegations against Logan:

Logan . . . has acted, and continues to act as a co-fiduciary, investment adviser and broker to each of the 4Cs Plans, and Plaintiffs who participate in each of the 4Cs Plans. By and through this conduct, Logan has exercised and continues to exercise discretionary authority and responsibility in the administration of these Plans. ECF 1 at ¶ 15.

At a time unknown prior to March 2003, . . . Logan began providing various services to the 4Cs Plans including, but not limited to investment advisory and consulting services. Plaintiffs allege . . . that . . . Logan . . . conspired and agreed to have the vested retirement account balances of Plaintiffs and all other vested 4Cs Plan participants converted into life annuities underwritten and sold by Defendant LSW. Defendants Logan and Villasenor instructed 4Cs management representatives to begin providing life annuity applications to Plaintiffs and all other 4Cs employees and instructed the 4Cs management representatives to inform Plaintiffs and other vested employee participants that that these were enrollment applications for participation in the 4Cs Plans. ECF 1 at ¶ 32.

On July 18, 2013, . . . Logan . . . made a presentation to the 4Cs Board of Trustees, wherein they persuaded the 4Cs Board of Trustees to make "15% elective contributions" to the 4Cs Profit Sharing Plan, and contribute $200,000.00 to the 4Cs Non-Qualified Deferred Compensation Plan. Plaintiffs allege . . . that this $200,000.000 contribution . . . [was] transferred into the custody and control of Defendants LSW and/or Cetera Financial Group and were applied as a premium payments life annuity contracts held in Plaintiffs' names and/or and as a lump sum premium payment made into a life annuity contract held by Defendant LSW and/or Cetera Financial Group." ECF 1 at 39.

In or about January 2015, Plaintiff Rasche, who had retired from 4Cs, contacted a

representative from Defendant Logan Group Securities to inquire about the employer contributions that had been made into the 4Cs Plans on his behalf. Plaintiff Rasche was informed by Defendant Logan Group Securities that his retirement benefit consisted of a "life annuity" and that he could not roll-over money from his "retirement account" into another tax qualified plan without incurring substantial penalties. ECF 1 at ¶ 41.

Plaintiff brings Claims Five (labeled Four) and Six (labeled Five) against Logan for breach of fiduciary duties. Claim Five (labeled Four) alleges, *inter alia*, that Logan breached his fiduciary duties by allowing the vested retirement account balances of Plaintiffs to be converted into the subject life annuity contracts. ECF 1 at ¶ 97. Claim Six (labeled Five) alleges, *inter alia*, that Logan breached his fiduciary duties by brokering the life annuity contracts, which resulted in the payment of commissions and/or other compensation to Logan, who Plaintiffs allege is a party-in-interest with respect to the 4Cs Plans. ECF 1 at ¶ 104.B.

Plaintiffs allege and argue that Logan is a fiduciary because he exercises discretionary authority and responsibility over the plans. Plaintiffs argue that the allegation that Logan advised 4Cs on when to make contributions and the percentage of elective employer contributions demonstrates that he managed and administered the plans. ECF 108 at 10. For the reasons described above, discretion over the plan lies solely with the 4Cs Board of Trustees,[15] not with a party selling a product. Only the Board could make the decision to invest in certain products. *See supra* section IV.d.i.; *Santomenno*, 883 F.3d at 838. Plaintiffs also argue, without support, that by informing Plaintiff Rasche that he could not roll-over his retirement account into another tax qualified plan, Logan managed and administered the plan, making him a fiduciary. Again, as explained above, the "threshold question" is not only whether Logan performed a fiduciary duty, but whether Logan was performing a fiduciary duty when taking the action subject to complaint. *Pegram*, 530 U.S. at 226.

Logan is named in Claims Five (labeled Four) and Six (labeled Five), both claims for breach of fiduciary duties under ERISA. Claim Five (labeled Four) relates to the conversion of retirement account balances to life annuity contracts. ECF 1 at 97. Claim Six (labeled Five)

---

[15] Plaintiffs allege that the 4Cs Board of Trustees established the 4Cs Plans and alleges that the 4Cs Board of Trustees is the plan sponsor and administrator. ECF 1 at ¶¶ 1, 10.

relates to extending credit or lending money to a party-in-interest. ECF 1 at 103. Neither of these allegations relate to Logan's alleged fiduciary administration of the plan by informing Rasche of restrictions on the transfer of his accounts. Therefore, Plaintiffs have failed to establish that Logan is a fiduciary for the purposes of their claims against him.

In opposition to Logan's motion to dismiss, Plaintiffs also argue, without support, that Logan's role as an investment advisor renders him a fiduciary. ECF 108 at 10-11. Specifically, Plaintiffs argue that the allegation that Logan made a presentation and persuaded 4Cs Board of Trustees to make 15% elective contributions to the 4Cs Profit Sharing Plan, and contribute $200,000.00 to the 4Cs Non-Qualified Deferred Compensation Plan constituted investment advice. *Id.*

Where a plaintiff alleges that a defendant is a fiduciary because of investment advice given for a fee, the following five factors must be met: (1) providing individualized investment advice; (2) the advice having been given pursuant to a mutual understanding; (3) the advice was provided on a regular basis; (4) the advice pertained to the value of property or consisted of recommendations as to the advisability of investing in certain property; and (5) the advice was rendered for a fee. *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.1994). Neither party addresses these five factors.

All five factors are not present in the allegations of the complaint. For example, even after construing the allegations of the complaint liberally in favor of finding a fiduciary relationship, *see Az. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir.1997) ("Fiduciary status under ERISA is to be construed liberally"), the complaint simply does not allege that Logan provided investment advice on a regular basis. The allegation that on one occasion Logan advised the plan to invest in LSW annuities is insufficient to constitute the rendering of regular investment advice. *See Damasco & Assocs. 401(k) Profit Sharing Plan v. Manufacturers Life Ins. Co.*, No. C 99-2135 CRB, 1999 WL 672322, at *5–6 (N.D. Cal. Aug. 20, 1999); *Schloegel v. Boswell*, 994 F.2d 266, 273 (5th Cir.1993) (holding that ERISA defendant's few, isolated instances of rendering investment advice to ERISA plan did not support a finding that the defendant "rendered investment-type advice to the Profit Sharing Plan on a regular

United States District Court
Northern District of California

basis"). Since the "regular investment advice" factor is not satisfied by the allegations of the complaint, the complaint does not allege that Logan was an ERISA fiduciary. *See Thomas, Head & Greisen Employees Trust*, 24 F.3d at 1119 (stating that "[a] finding that the investment advisor rendered advice on a 'regular basis' is essential to a determination that a fiduciary relationship existed"). Therefore, claims Five (labeled Four) and Six (labeled Five) are dismissed as to Logan with leave to amend.

### e. Individual Defendants

The complaint names the following individuals as Defendants: Ben Menor, Xiaoyan Xu, Clarence Madrilejos, James McDaniel, Julienne La Fitte, Jaime Gallardo, Maria Reyes and Faye Sears "in their official capacities as current and former trustees." *See* ECF 1 at 1-2. However, beyond identifying them as defendants in paragraph nine of the complaint, there are no specific allegations that describe specific wrongful acts in connection with Plaintiffs' claims. Accordingly, Plaintiffs have failed to state a claim against these Defendants, and they must be dismissed. Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8; *see also Naguiat v. BAC Home Loans Servicing, LP*, No. C 10-4303 RS, 2011 WL 577421, at *2 (N.D. Cal. Feb. 9, 2011) (dismissing complaint against defendant where no specific wrongful action by defendant was alleged). Plaintiffs will be given the opportunity to amend to demonstrate, with factual allegations made in good faith, that they have claims that are not time-barred against the individual defendants. Plaintiffs are cautioned that the amended complaint must set out facts specific to their own claims.[16]

### V. CONCLUSION

As explained above, the Court dismisses the following claims as to the following Defendants:

- Claim One: Dismissed as to all moving Defendants without leave to amend.
- Claim Two: Dismissed as to LSW without leave to amend. Dismissed as to all moving Defendants named in Claim Two for those actions occurring before

---

[16] These individual defendants also moved to be dismissed under the Volunteer Protection Act, 42 U.S.C. § 14501. However, because Plaintiffs have failed to state a claim against the individual defendants as described above, the Court does not reach this argument.

December 21, 2014 without leave to amend.  Dismissed as to Defendants 4Cs and 4C Board of Trustees, with leave to amend as to actions occurring after December 21, 2014.

- Claim Three:  Dismissed as to all moving Defendants without leave to amend.
- Claim Four:  Dismissed as to all moving Defendants without leave to amend.
- Claim Five (labeled Four):  Dismissed as to LSW and Logan with leave to amend.  Claim Five survives as to Defendants 4Cs, 4Cs Board of Trustees, and Chacon.
- Claim Six (labeled Five):  Dismissed as to LSW and Logan with leave to amend.
- Claim Seven (labeled Six):  Dismissed as to all moving Defendants without leave to amend.
- Claim Eight (labeled Seven):  Dismissed as to all moving Defendants without leave to amend.
- Claim Nine (labeled Eight):  Dismissed as to all moving Defendants without leave to amend.

Requests for Judicial Notice:

- The Court grants LSW's Request for Judicial Notice.
- The Court grants 4Cs's Request for Judicial Notice.

**SO ORDERED.**

Dated: May 24, 2018

SUSAN VAN KEULEN
United States Magistrate Judge

29