UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIO DEL CASTILLO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COMMUNITY CHILD CARE COUNCIL OF SANTA CLARA COUNTY, INC., et al.,<br><br>Defendants. | Case No. 17-cv-07243-BLF<br><br>**ORDER GRANTING WITH LEAVE TO AMEND DEFENDANT LOGAN'S MOTION TO DISMISS; GRANTING WITH LEAVE TO AMEND IN PART AND DENYING IN PART DEFENDANT LSW'S MOTION TO DISMISS; TERMINATING AS MOOT DEFENDANTS FARS, UNGER, AND CHACON'S MOTION TO DISMISS**<br><br>[Re: ECF 181, 183, 185, 186] |

Before the Court are three motions to dismiss by various Defendants in this ERISA action: (1) Defendant Life Insurance Company of the Southwest's ("LSW") Motion to Dismiss the Second Amended Complaint (LSW Mot., ECF 181); (2) Defendants First Allied Retirement Services, Inc. ("FARS"), Robert C. Unger, and Mary Chacon's Motion to Dismiss Plaintiffs' Second Amended Complaint Without Leave to Amend (ECF 183); and (3) Defendant Kevin Logan's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF 185; Logan Mot., ECF 186).[1]

On June 25, 2019, the Court granted Plaintiffs' and Defendants FARS, Unger, and Chacon's stipulation to dismiss these three Defendants with prejudice. ECF 219. Thus, these Defendants' motion to dismiss is TERMINATED AS MOOT.

As set forth in detail below, Defendant LSW's motion to dismiss is GRANTED WITH LEAVE TO AMEND IN PART AND DENIED IN PART and Defendant Logan's motion to dismiss is GRANTED WITH LEAVE TO AMEND.

---

[1] The remaining Defendants answered the Second Amended Complaint. *See* ECF 184; ECF 188.

## I. BACKGROUND

Before this case was reassigned to the undersigned on January 14, 2019 (ECF 197) (based on the non-consent of newly added Plaintiff Javier Cardoza), the Honorable Susan van Keulen issued two thorough, well-reasoned orders on two rounds of motions to dismiss. *See* ECF 133, 168. Each order aptly describes the background of this ERISA putative class action, so the Court will not repeat that background here. Instead, the Court reiterates only those facts pertinent to LSW's and Logan's motions to dismiss the Second Amended Complaint ("SAC"). Before beginning, however, the Court notes that in her order dismissing the First Amended Complaint Judge van Keulen gave Plaintiffs one final chance to amend to allege that LSW and Logan are fiduciaries under ERISA. *See* ECF 168 at 34. Plaintiffs did not make such allegations in the SAC.

Plaintiffs Mario Del Castillo, Puthea Chea, Michael Rasche, and Javier Cardoza are four current or former employees of Defendant Community Child Care Council of Santa Clara County, Inc. ("4Cs")[2]. Second Am. Compl. ("SAC") at ¶¶ 3–6, ECF 176. 4Cs has two employee welfare benefit plans at issue in this case: (1) a Defined Contribution Pension Plan, subsequently renamed as the Defined Contribution Profit Sharing Plan ("DC Plan") and (2) a Non-qualified Deferred Compensation Pension Plan ("Non-qualified Plan") (collectively "4Cs Plans"). *Id.* ¶ 62.

Defendant LSW insures life annuity contracts purchased by 4Cs for each Plaintiff and provides investment consulting services to participants of the plans. *Id.* ¶¶ 20–28. 4Cs paid fees to LSW for these services. *Id.* ¶ 25. Plaintiffs allege that LSW is a service provider and party-in-interest to the 4Cs Plans within the meaning of ERISA; they do not allege that LSW is a fiduciary. *Id.* ¶¶ 27, 183–84. They also allege the following regarding joinder of LSW:

> LSW is a proper defendant in this action because complete relief cannot be afforded to Plaintiffs and the putative class without LSW's joinder as a defendant. See F. Rule Civ. Proc. 19(a)(1)(A). Relief in this action will not be meaningful or complete unless the life annuity contracts at issue are rescinded. Accordingly, insofar as LSW is a party to those life annuity contracts, complete relief cannot be afforded in LSW's absence. Additionally, complete relief in this action cannot be afforded unless the fees paid to LSW are returned to the 4Cs Plans.

*Id.* ¶ 28.

---

[2] The Court also uses 4Cs generally to describe 4Cs, its Defendant Board, the individual Defendant Board members, and Defendant Villasenor.

2

Defendant Logan served as LSW's agent and representative, performing many services for 4Cs on behalf of LSW. *Id.* ¶¶ 31–33. 4Cs paid Logan fees and commissions for these services. *Id.* ¶ 34. Plaintiffs allege that Logan is a service provider and party-in-interest with respect to the 4Cs Plans under ERISA; they do not allege that Logan is a fiduciary. *Id.* ¶ 35. They also allege the following regarding joinder of Logan:

> Logan is a proper defendant in this action because complete relief cannot be provided to Plaintiffs and the putative class without Logan's joinder as a defendant. See F. Rule Civ. Proc. 19(a)(1)(A). Complete relief in this action cannot be afforded unless the fees paid to Logan are returned to the 4Cs Plans.

*Id.* ¶ 36.

Plaintiffs allege that these life annuity contracts were highly restrictive, financially imprudent, and unlawful. *See, e.g.*, *id.* ¶¶ 83, 159. They also allege that the contracts are void because the purchase of the contracts was not permitted under any written instrument of the 4Cs Plan. *Id.* ¶ 182. Because the contracts were unlawful, Plaintiffs allege that the fees and commissions paid to LSW and Logan were unreasonable. *See, e.g.*, *id.* ¶¶ 179–85. Plaintiffs also allege that 4Cs engaged in prohibited transactions with LSW and Logan under ERISA. *See id.*

In the SAC, Plaintiffs bring ten claims under ERISA. *See generally id.* None of these claims is asserted against Logan or LSW; that is, Plaintiffs do not bring any causes of action against Logan or LSW. *See id.* ¶¶ 141–248. Nevertheless, Plaintiffs seek various relief from both LSW and Logan throughout the SAC and in the Prayer for Relief.

In the allegations under specific claims, Plaintiffs seek at least the following relief from LSW: rescission of the life annuities and return of the value of the premium payments; an enjoinder of LSW from enforcing surrender charges or withdrawal charges and any other restrictions that would prevent participants from withdrawing the full value of all premium payments, plus accrued interest from each life annuity account; and an enjoinder of LSW from receiving any fees, commissions, compensation or other items of monetary value from 4Cs Plans. *See id.* ¶¶ 163, 164, 193, 211. As to Logan, Plaintiffs seek an order requiring Logan to return all commissions and compensations to the 4Cs Plan and enjoining Logan from receiving any fees, commissions, or compensation from the 4Cs Plans in the future. *See id.* ¶¶ 165, 193.

3

In the Prayer for Relief, Plaintiffs seek to force LSW and Logan to "correct the prohibited transactions in which they engaged and to return all funds received as a result of the prohibited transactions to the Plans." SAC at 49 ¶ 6. Plaintiffs also seek to permanently enjoin LSW and Logan from "receiving any fees, commissions, compensation or other items of monetary value from any and all contributions." *Id.* at 49 ¶ 8.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese*, 643 F.3d at 690. However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by

4

amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### III. DISCUSSION

LSW and Logan (collectively, "Defendants") move to dismiss their inclusion in the SAC on several grounds, including most importantly that Plaintiffs do not assert a single cause of action against them and they are not subject to joinder under Federal Rule of Civil Procedure ("FRCP") 19.

In their oppositions to LSW's and Logan's motions, Plaintiffs assert two theories for why the Court should not dismiss LSW and Logan. First, Plaintiffs argue that both LSW and Logan are necessary parties under FRCP 19(a)(1)(A). LSW Opp. at 21–26, ECF 203; Logan Opp. at 24–25, ECF 204. Second, Plaintiffs argue that they can seek appropriate equitable relief from Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132, without suing Defendants under one of ERISA's substantive provisions, pursuant to *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000).[3] LSW Opp. at 18–21; Logan Opp. at 21–23.

The Court first discusses the joinder theory then turns to the Section 502(a)(3) theory. The Court ends by discussing a few miscellaneous arguments in the briefs.

#### A. Joinder

Before the Court addresses the parties' substantive joinder arguments, it first rejects two antecedent arguments made by Plaintiffs. Plaintiffs argue in their oppositions that Defendants' joinder arguments raise questions of fact not appropriate for resolution at the motion to dismiss stage and that Defendants waived their right to assert joinder arguments under FRCP 12(h) because they could have made the joinder arguments in response to Plaintiffs FAC. LSW Opp. at

---

[3] Plaintiffs subsume this argument under a broader "joinder" heading, but this argument does not comport with the traditional FRCP 19 inquiry. Instead, as the Court in *Harris* made clear, Section 502(a)(3) is a claim that provides its own avenue for liability. *See Harris*, 530 U.S. at 245 & n.2 ("§ 502(a)(3) itself imposes certain duties, and therefore [] liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued.")

5

14–18; Logan Opp. at 16–20. Neither of these arguments is availing. First, the Court resolves the joinder issue based on the factual allegations in the SAC, including the relief sought; additional facts are not required. Second, though Plaintiffs included bare references to FRCP 19 in their FAC, *see* ECF 135 ¶¶ 30, 40, the context of Defendants' motions to dismiss the FAC were much different than the current motions. In the FAC, Plaintiffs asserted several causes of action against Defendants and framed their requests for relief from those Defendants as tied to liability on those claims. Here, the requests for relief from Defendants is only expressly tied to the bare joinder allegations against them. *See* Logan Reply at 3–4, ECF 206. Because Defendants could not have expected joinder to play the role Plaintiffs now seek to cast it in, Defendants did not waive their right to challenge it now.

The Court now turns to the substantive joinder issue, discussing first the general joinder law and then the parties' arguments here.

### 1. Joinder Law

FRCP 19 provides for joinder of required parties. FRCP 19(a)(1) states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

In evaluating joinder under Rule 19, "the court must determine whether the absent party is 'necessary.'" *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999) (citing Fed. R. Civ. P. 19(a)(1)). Specifically, "[a] party is deemed 'necessary' if complete relief cannot be granted in its absence." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). "This factor is concerned with consummate rather than partial or hollow relief as to those

[who are] already parties." *Id.* (citation omitted). In conducting this analysis, a court inquires "whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Id.*

"If the absent party is 'necessary,' the court then determines whether joinder is 'feasible.'" *Bowen*, 172 F.3d at 688. "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *E.E.O.C. v. Peabody W. Coal Co.* (*Peobody I*), 400 F.3d 774, 779 (9th Cir. 2005).

### 2. Analysis

LSW and Logan each argue that they cannot be joined under FRCP 19. Neither argues that joinder is not feasible, and the Court is not aware of any facts indicating that this case can be categorized as one of the three circumstances in which courts find joinder infeasible.

Turning to LSW's arguments, LSW notes that Plaintiffs are requesting relief directly from LSW that the named parties cannot provide—including voiding the annuities, precluding LSW from receiving payments from Plan participants, and making LSW return premium payments. LSW Mot. at 5. LSW argues that requests for relief from nonparties requires a finding of liability against the nonparty, at least where the relief sought subjects the nonparty to more than just "minor or ancillary provisions of an injunctive order." LSW Mot. at 5 (citing *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004); *General Building Contractors Assn. v. Pennsylvania*, 458 U.S. 375 (1982)). So, LSW asserts, because Plaintiffs have not asserted a cause of action against LSW and seek more than ancillary relief against it, these requests for relief are not allowed, and LSW is not a necessary party under FRCP 19.

Logan, for his part, argues that Plaintiffs do not have standing to seek a return of fees from him to the 4Cs Plan because Plaintiffs are not acting on behalf of the 4Cs Plan. Logan Mot. at 9–10. Likewise, he argues that Plaintiffs' Prayer for Relief does not seek this remedy. *Id.* The Court addresses (and rejects) this standing argument below with respect to Section 502(a)(3). As to joinder under FRCP 19, Logan argues he is merely LSW's sales agent and has no continuing contractual obligations to Plaintiffs or the 4Cs Plan. Because Plaintiffs seek only repayment of

7

fees from him and an injunction on further collection of fees, he says he is not a necessary party. *Id.*

Plaintiffs counter that LSW is a necessary party because Plaintiffs are asking the Court to void the annuities contracts, to which LSW is a party. LSW Opp. at 21–24. Plaintiffs argue that if the Court voids these contracts and LSW is not joined, the Court might issue judgment that binds only 4Cs, allowing LSW to later file suit to enforce the contracts. *Id.* at 21, 25–26. Plaintiffs also briefly argue, without citation, that full relief cannot be afforded unless LSW repays the unreasonable fees that the 4Cs Plan paid it. LSW Opp. at 24–25. Likewise, they argue that Logan is a necessary party because they seek to enjoin him from working with 4Cs to violate ERISA in the future and to enjoin him to return his allegedly ill-gotten funds. *See* Logan Opp. at 24–25.

The Court agrees with Plaintiffs that LSW is a necessary party but only with respect to Plaintiffs' request to rescind or void the annuities contracts. The Ninth Circuit has made clear that in suits to rescind or void a contract, parties to the contract are necessary parties under FRCP 19. Indeed, the Ninth Circuit has said that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975); *accord Ward v. Apple Inc.*, 791 F.3d 1041, 1053 (9th Cir. 2015) ("[I]t is well established that all parties to a contract are necessary in an action to set aside the contract.").

For example, in *Manybeads v. United States*, the Ninth Circuit held that the Hopi Tribe was a necessary party under FRCP 19(a)(1)&(2) because the plaintiffs were challenging two agreements to which the Hopi Tribe was a party. 209 F.3d 1164, 1165–66 (9th Cir. 2000). The Tribe was necessary under FRCP 19(a)(1) because the plaintiffs could not "be afforded complete relief without undoing the Accommodation Agreement which limits the rights of Navajos on Hopi land, and without undoing the Settlement Agreement by which the Hopi Tribe is entitled to compensation for what is conceded to the Navajos." *Id.* at 1166. Because the Hopi Tribe's rights were directly implicated, it was a necessary party. *See also Camofi Master LDC v. Associated Third Party Administrators*, No. 16-CV-00855-EMC, 2016 WL 6834585, at *5 (N.D. Cal. Nov.

8

1  21, 2016); *Jordan v. Paul Fin., LLC*, 644 F. Supp. 2d 1156, 1172 (N.D. Cal. 2009).

2  This case law makes clear that LSW is a necessary party to this case under FRCP 19 because it is a party to the annuities contracts that Plaintiffs seek to rescind. SAC ¶ 28. If the Court were to rule that the annuities are void, LSW's rights under the contract would be implicated, but it would not be bound by the judgment. If all of the Defendants were to comply with the judgment rather than their obligations under the contracts, LSW could seek to vindicate its rights under the contract against the Defendants. Such a result would put Defendants "between the proverbial rock and a hard place"—comply with the judgment or comply with their duties under the annuities contracts. *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155–56 (9th Cir. 2002); *see also E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010). As such, LSW is a necessary party under FRCP 19 with respect to the requested relief of rescinding or voiding the annuities contracts. Thus, LSW's motion is DENIED with respect to Plaintiff's request that the Court void or rescind the annuities contracts.

By contrast, LSW is not a necessary party with respect to Plaintiffs' requests for return of fees and commissions or enjoinder of receipt of future money from 4Cs. Likewise, because Plaintiffs request only this type of relief from Logan, he is not a necessary party under FRCP 19. These requests for relief do not require joinder under FRCP 19 because Plaintiffs can obtain meaningful relief from the named Defendants without joining Logan or LSW. If the Court were to enjoin 4Cs from giving money to Defendants in the future, 4Cs would be bound by that judgment and Defendants would have no independent right to those funds. And to the extent Plaintiffs seek the return of the commissions and fees that 4Cs paid to LSW and Logan, Plaintiffs can receive the amount of those funds from the named Defendants. *Cf. Disabled Rights Action Comm.*, 375 F.3d at 880 (holding district court abused its discretion in joining defendant under FRCP 19(a)(1) when plaintiff could get meaningful relief from the existing parties). Indeed, Plaintiffs' requests for relief are directed at Logan and LSW—they are not merely ancillary impacts of a requested judgment against the named Defendants. Rather they are a request for damages or equitable and injunctive relief against Logan and LSW themselves. Plaintiffs are not entitled to such relief without a finding of liability against these Defendants. *Cf. Gen. Bldg. Contractors*, 458 U.S. at

9

399–401. Indeed, Plaintiffs do not cite a single case in which the return of funds from an absentee party was an appropriate basis for FRCP 19 joinder.

Thus, Logan is not properly joined under FRCP 19, and his motion is GRANTED. Likewise, Plaintiffs cannot seek this type of requested relief from LSW based on its joinder under FRCP 19, so its motion is GRANTED as to this relief.

### B. Section 502(a)(3)

As mentioned, Plaintiffs do not assert a single cause of action against LSW or Logan. And the Court has now held that neither party is properly joined with respect to relief that does not include voiding the annuities contracts. Thus, there are no plausible allegations in the SAC allowing Logan to be named or Plaintiffs to seek any non-annuities-related relief from LSW. The question then is whether the Court should provide Plaintiffs the opportunity to amend to allege justifications for these requests for relief. The Court finds that the answer is yes, but only on one narrow ground: Plaintiffs may amend to seek relief from LSW and Logan on alleged violations of ERISA § 502(a)(3). Because all of the parties addressed this potential claim in their briefing, the Court briefly addresses what stating such a claim would require.

ERISA § 502 governs civil enforcement of ERISA violations. Section 502(a)(3) states that "A civil action may be brought—(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The Supreme Court in *Harris Trust* held that "§ 502(a)(3) itself imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." 530 U.S. at 245. *Harris* then held that Section 502(a)(3) allows the enumerated parties to sue non-fiduciaries even if the non-fiduciaries did not violate other provisions of ERISA. *See id.* at 247.

The Supreme Court noted that Section 502(a)(3) has explicit limiting principles. For one, the only possible relief is "appropriate equitable relief." *Id.* at 250. The Supreme Court noted that "an action for restitution of property . . . or disgorgement of proceeds . . . and disgorgement of

10

third person's profits derived therefrom" might be appropriate relief where a trustee transfers funds in breach of his fiduciary duties to a third person, "unless [the third person] has purchased the property for value and without notice of the breach's fiduciary duty." *Id.* The Court emphasized that in the ERISA context, assuming the transferee has purchased the assets for value, "the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Id.* What's more, "[t]hose circumstances, in turn, involve a showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a [ERISA] § 406(a) transaction, caused the plan to engage in the transaction." *Id.* The Court concluded by holding that "an action for restitution against a transferee of tainted plan assets satisfies the 'appropriateness' criterion in § 502(a)(3)." *Id.* at 253 (alteration omitted); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("([A]ssuming nonfiduciaries can be sued under § 502(a)(3)) [professional service providers] may be enjoined from participating in a fiduciary's breaches, compelled to make restitution, and subjected to other equitable decrees.")

Under *Harris* then, to state a claim under Section 502(a)(3) against a non-fiduciary, "a plaintiff who is a 'participant, beneficiary, or fiduciary' must prove both (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan, *see Mertens*, 508 U.S. at 254; and (2) that the relief sought is 'appropriate equitable relief,' 29 U.S.C. § 1132(a)(3)(B)." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014). Moreover, under *Harris*, the non-fiduciary must have "actual or constructive knowledge" of the circumstances that rendered any prohibited transaction wrongful. *See Kalan v. Farmers & Merchants Tr. Co. of Chambersburg*, No. CV 15-1435, 2016 WL 3087360, at *1 (E.D. Pa. June 2, 2016).

Thus, on the facts of this case, and under the substantive claims currently alleged, Plaintiffs seemingly must plead that LSW and Logan engaged in prohibited transactions in which the 4Cs Defendants knowingly breached their fiduciary duty and in which Logan and LSW knowingly received fees that were unreasonable, either because the annuities were imprudent or the fees were otherwise excessive. The SAC does not clearly allege each these requirements, including that

11

Logan and LSW knew they were receiving unreasonable fees.

Moreover, the SAC is devoid of allegations plausibly showing that all of the requested relief is equitable in nature. Because Section 502(a)(3) allows the plaintiff to seek only "appropriate equitable relief," courts must closely analyze whether the requested relief is legal relief, such as money damages, or equitable relief. "To qualify as 'equitable relief,' both '(1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought' must be equitable rather than legal." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir. 2019) (citing *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S.Ct. 651, 657 (2016)). In *Depot*, the Ninth Circuit warned that "[a]lmost invariably suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages'"—the "classic form of legal relief." *Id.* at 661 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)).

Indeed, even claims labeled as "restitution" or "disgorgement" may not be equitable in nature. The Ninth Circuit explained the difference between restitution in equity and restitution in law: "A plaintiff seeks 'restitution at law' when the plaintiff cannot 'assert title or right to possession of particular property' but instead seeks to 'impose personal liability on the defendant' as a means of 'recovering money to pay for some benefit the defendant . . . received from [the plaintiff].'" *Id.* (quoting *Great-West*, 534 U.S. at 213–14). "By contrast, a plaintiff seeks 'restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Id.* (quoting *Great-West*, 534 U.S. at 213) (alteration in original). In *Depot*, the Ninth Circuit held that the plaintiffs had not alleged that their request for restitution of premium surcharges was equitable relief for many reasons, including that they had not identified a specific fund to which they were entitled and that they never alleged the existence of a general account in which the ill-gotten funds were commingled. *Id.* at 662–63. The Ninth Circuit also rejected the plaintiffs' disgorgement theory given the "absence of any particular property" in the case. *Id.* at 664–65.

Here, though Plaintiffs seem to request equitable relief, the substance of their requests for

restitution of commissions, fees, and premium payments appears to be requests for legal relief, which do no qualify under Section 502(a)(3). To meet the requirements of that Section, Plaintiffs must allege facts demonstrating that their requests are truly equitable in nature, as explicitly laid out in *Depot* and related cases.[4]

Thus, not only do Plaintiffs not assert a Section 502(a)(3) claim, but their SAC allegations fail to allege the necessary elements for such a claim. Because the Court believes Plaintiffs may be able to add a viable Section 502(a)(3) claim against LSW and Logan, it will give Plaintiffs a single opportunity to amend to add this claim only, and only as to the relief requested in the SAC. Plaintiffs may not add parties or additional claims without express leave of Court. LSW's and Logan's motions are GRANTED WITH LEAVE TO AMEND.

### C. Miscellaneous Arguments

The Court briefly addresses three additional arguments in the briefs, one by Plaintiffs and two by Logan.

First, Plaintiffs argue that they have not abandoned their theory that either LSW or Logan are fiduciaries of the 4Cs, though Judge van Keulen gave them one final opportunity to amend on this issue and they chose not to do so in the SAC. They say they are simply waiting to plead more facts on this issue until after discovery. LSW Opp. at 13; Logan Opp. at 12–13. To the extent Plaintiffs will seek to amend their complaint at a later date to add such allegations, having declined the prior opportunity to amend this claim within the allotted 21 days (ECF 168 at 44), they must seek leave of Court and meet FRCP 16's good cause standard. Moreover, because they have not pled this theory, they are not entitled to discovery based on it.

Second, Logan argues that several of Plaintiffs' claims are barred by their relevant statutes of limitations. Because none of the claims are stated against Logan, he does not have standing to assert this argument. But even if he did, Judge van Keulen has already provided comprehensive

---

[4] This holding does not conflict with Judge van Keulen's prior holding, ECF 168 at 39–41, because she relied on Plaintiffs' bringing a claim under both 502(a)(3) and 502(a)(1), which does not have the same "equitable relief" language. Plaintiffs did not argue in their oppositions that they were entitled to relief under 502(a)(1) against Logan and LSW, and they are not permitted to amend their complaint to state a claim under that provision. Neither did they argue that Judge van Keulen's prior order barred this argument.

13

rulings on the statutes of limitations that are binding in this case. *See, e.g.*, ECF 168 at 13–18.

Finally, Logan argues that Plaintiffs do not have standing to seek recovery of fees paid by 4Cs to Logan, and, similarly, he argues that allowing Plaintiffs to have such fees returned to 4Cs would not be "equitable" under 502(a)(3) because Plaintiffs do not have a right to those fees. Logan Mot. at 9–10. Logan does not cite any case law for either of these propositions. As to the former, because Logan does not invoke Article III, the Court reads his argument to mean that Plaintiffs do not have a statutory right to seek such funds. This contention is easily dismissed because Section 502(a)(3) allows plan "participant[s]" to "obtain other appropriate equitable relief to redress [] violations" or ERISA. Nothing in this language limits them to seeking relief from certain Defendants (*i.e.*, those to whom Plaintiffs have paid money directly); and in fact, restitution of fees to the 4Cs Plan will assumedly provide some relief to Plaintiffs, who still participate in the Plan. As to Logan's equitable relief argument, the Court has already indicated that Plaintiffs must allege more with respect to equitable relief under Section 502(a)(3). But again, given Logan's lack of case cites, the Court cannot say as a matter of law that Plaintiffs' requests for restitution of fees to the Plan is outside the bounds of the equitable relief contemplated by Section 502(a)(3). Of course, the Court fully expects Plaintiffs to conduct the appropriate FRCP 11 analysis before adding this claim to their complaint, including researching whether a Plan participant can request such secondhand relief.

## IV. ORDER

Based on the foregoing, the Court orders as follows:

1. LSW's motion to dismiss is DENIED with respect to Plaintiffs' requested relief that the Court void or rescind the annuities contracts.

2. LSW's motion is GRANTED WITH LEAVE TO AMEND with respect to the remainder of Plaintiffs' requested relief.

3. Logan's motion is GRANTED WITH LEAVE TO AMEND with respect to all relief requested of him.

4. Plaintiffs may amend only to add a claim under Section 502(a)(3) against Logan and LSW and factual allegations to support such a claim.

14

Plaintiffs must submit a redlined document comparing their Third Amended Complaint to the SAC. Plaintiffs may not add new parties or any other claims and may not attempt to allege new facts to show that joinder is appropriate under FRCP 19. Plaintiffs are also expected to remove superfluous allegations and claims with respect to Defendants Chacon, Unger, and FARS, who are now dismissed. Any motions to dismiss the Third Amended Complaint are limited to 30 pages in total for all Defendants. Defendants are *strongly* encouraged to submit joint briefing; any joint brief is limited to 25 pages. Plaintiffs' Third Amended Complaint is due **21 days from the date of this Order**. Discovery opens on the date the Third Amended Complaint is filed.

**IT IS SO ORDERED.**

Dated: June 27, 2019

BETH LABSON FREEMAN
United States District Judge