**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARIO DEL CASTILLO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY CHILD CARE COUNCIL OF SANTA CLARA COUNTY, INC., et al., <br><br> Defendants. | Case No. 17-cv-07243-BLF <br><br> **ORDER GRANTING DEFENDANT LIFE INSURANCE COMPANY OF THE SOUTHWEST'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND; GRANTING DEFENDANT KEVIN LOGAN'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND** <br><br> [Re: ECF 231] |

Before the Court is Defendants Life Insurance Company of the Southwest's ("LSW") and Kevin Logan's ("Logan") Consolidated Motion to Dismiss the Third Amended Complaint. ECF 231. The Court heard oral arguments on November 21, 2019 (the "Hearing").

As set forth in detail below, Defendant LSW's motion to dismiss is GRANTED WITH LEAVE TO AMEND and Defendant Logan's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND. The Court notes that it was not persuaded by Plaintiffs' written submissions or oral argument at this round of motions to dismiss that any of Plaintiffs' current theories against LSW could move forward. Nevertheless, counsel for Plaintiffs indicated at the Hearing that additional facts may be alleged to support their claims and thus, the Court allows ***one last amendment*** as to LSW.

**I.  BACKGROUND**

Before this case was reassigned to the undersigned on January 14, 2019 (ECF 197), the Honorable Susan van Keulen issued two thorough, well-reasoned orders on two rounds of motions to dismiss. *See* ECF 133, 168. Each order aptly describes the background of this ERISA putative

class action, so the Court will not repeat that background here. Instead, the Court reiterates only those facts pertinent to LSW's and Logan's motions to dismiss the Third Amended Complaint ("TAC").

Plaintiffs Mario Del Castillo, Puthea Chea, Michael Rasche, and Javier Cardoza are four current or former employees of Defendant Community Child Care Council of Santa Clara County, Inc. ("4Cs")[1]. TAC ¶¶ 3–6, ECF 229. 4Cs has two employee welfare benefit plans at issue in this case: (1) a Defined Contribution Pension Plan, subsequently renamed as the Defined Contribution Profit Sharing Plan ("DC Plan") and (2) a Non-qualified Deferred Compensation Pension Plan ("Non-qualified Plan") (collectively "4Cs Plans"). *Id.* ¶ 49.

Defendant LSW insures life annuity contracts purchased by 4Cs for each Plaintiff and provides investment consulting services to participants of the 4Cs Plans. TAC ¶¶ 20–28. 4Cs paid fees to LSW for these services. *Id.* ¶ 25. Plaintiffs allege that LSW is a service provider and party-in-interest to the 4Cs Plans within the meaning of ERISA; they do not allege that LSW is a fiduciary. *Id.* ¶¶ 27, 168. Defendant Logan served as LSW's agent and representative, performing many services for 4Cs on behalf of LSW. TAC ¶¶ 31–33. 4Cs paid Logan fees and commissions for these services. *Id.* ¶ 34. Plaintiffs allege that Logan is a service provider and party-in-interest with respect to the 4Cs Plans under ERISA; they do not allege that Logan is a fiduciary. *Id.* ¶ 35.

Plaintiffs allege that the LSW life annuity contracts were highly restrictive, financially imprudent, and unlawful. *See, e.g.*, TAC ¶¶ 70, 141. They also allege that the contracts are void because the purchase of the contracts was not permitted under any written instrument of the 4Cs Plan. *Id.* ¶ 167. Plaintiffs' allegations against LSW and Logan have been through three rounds of motions to dismiss. *See* ECF 133, 168, 221. In this Court's last order, the Court granted LSW's and Logan's motions to dismiss the Second Amended Complaint with leave to amend ***only on one narrow ground***: Plaintiffs were permitted to amend to seek relief from LSW and Logan on alleged violations of ERISA § 502(a)(3). Order on Mot. to Dismiss Second Am. Compl. ("SAC Order") at

---

[1] The Court also uses "4Cs Defendants" generally to describe 4Cs, its Defendant Board, the individual Defendant Board members, and Defendant Villasenor.

2

10, ECF 221.[2]

Now, in their TAC, Plaintiffs allege that LSW and Logan had "actual and constructive knowledge" that the 4Cs Defendants violated ERISA "by engaging in, authorizing and permitting prohibited financial transactions." TAC ¶¶ 165; 172. Plaintiffs claim that the compensation paid to LSW and Logan was unreasonable because (1) the 4Cs Plans never engaged in competitive bidding procedures for the purpose of determining the reasonableness of the costs and fees and (2) the compensation was "in excess of market rates." *Id.* ¶¶ 163-64; 170-71. The allegedly unreasonable payments to LSW and Logan are identical: at least $75,788.00 between 2010 and 2012.[3] *Id.* ¶¶ 165;172. Additionally, Plaintiffs allege that LSW used the premium payments collected from the 4Cs plans "to generate other revenue and investment earnings," which, Plaintiffs claim, constituted "lending of money or extension of credit" under ERISA. *Id.* ¶ 173.

In the TAC, Plaintiffs bring ten claims under ERISA, one of which is brought against LSW and Logan for violation of ERISA § 502(a)(3). *See generally* TAC; *id.* ¶¶ 151-80. Plaintiffs seek an injunction prohibiting LSW and Logan from receiving any fees, commissions, compensation or other items of monetary value from the 4Cs Plans. *Id.* ¶ 176. In the Prayer for Relief, Plaintiffs seek to force LSW and Logan to "correct the prohibited transactions in which they engaged" and to return to the 4Cs Plans all funds received as a result of the prohibited transactions. TAC at 46 ¶ 6.

From Logan, Plaintiffs also seek to recover "all unreasonable commissions and other compensation received therefrom which are traceable to a general account held in the name of Logan, Logan Group Securities or LSW." TAC ¶ 166. As for LSW, Plaintiffs seek the return of "all unreasonable commissions, retained surrender charges, revenues, investment earnings and all other forms of compensation received from the 4Cs Plans." *Id.* ¶ 174. Plaintiffs seek to recover

---

[2] The Court also found that LSW is a necessary party under FRCP 19 but only with respect to Plaintiffs' request to rescind or void the annuities contracts, to which LSW is a party. SAC Order at 8-9. The Court's determination on the issue of joinder is not at issue in the present motion.

[3] The Court notes that other paragraphs in the TAC provide various amounts for the commissions received by LSW and Logan. *See* TAC ¶¶ 25 ($123,295 in commissions to LSW for years 2010 through 2012); 127 (combined payments of approximately $96,898.00 in fees and commissions to LSW and Logan in 2010); 128 (combined payments of approximately $102,308.00 in fees and commissions to LSW and Logan).

3

from "any annuity account or general account" to which LSW compensation was deposited and is thus "traceable," including: (1) any individual annuity accounts purchased by the 4Cs Plans for any Plaintiffs and (2) any general account of LSW where any compensation from the 4Cs Plans was deposited. *Id.* Finally, Plaintiffs seek an award of "reasonable investment rate of return that could have otherwise been achieved on all revenues, investment earnings, commissions or other forms of compensation paid to and retained by LSW and Logan." *Id.* ¶ 177.[4]

## II. LEGAL STANDARD

### A. Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese*, 643 F.3d at 690. However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

---

[4] The Court notes that Plaintiffs seek various other relief from LSW and Logan throughout the TAC based on claims in which LSW and Logan are not named (Specifically, First, Second, and Fifth Claims for Relief). *See e.g.*, TAC ¶¶ 132, 145, 147, 194. Plaintiffs explained that they did not "intend to reassert any previously dismissed claims" and asked for an opportunity to amend and remove those references. Opp'n at 9, ECF 238. Plaintiffs' request is GRANTED.

4

1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### B. ERISA § 502(a)(3)

ERISA § 502 governs civil enforcement of ERISA violations. Section 502(a)(3) states that "A civil action may be brought—(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The Supreme Court in *Harris* held that "§ 502(a)(3) itself imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000). *Harris* then held that Section 502(a)(3) allows the enumerated parties to sue non-fiduciaries even if the non-fiduciaries did not violate other provisions of ERISA. *See id.* at 247.

The Supreme Court noted that Section 502(a)(3) has explicit limiting principles. For one, the only possible relief is "appropriate equitable relief." *Id.* at 250. The Supreme Court noted that "an action for restitution of property . . . or disgorgement of proceeds . . . and disgorgement of third person's profits derived therefrom" might be appropriate relief where a trustee transfers funds in breach of his fiduciary duties to a third person, "unless [the third person] has purchased the property for value and without notice of the breach's fiduciary duty." *Id.* The Court emphasized that in the ERISA context, assuming the transferee has purchased the assets for value, "the transferee must be

5

demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Id.* What's more, "[t]hose circumstances, in turn, involve a showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a [ERISA] § 406(a) transaction, caused the plan to engage in the transaction." *Id.* The Court concluded by holding that "an action for restitution against a transferee of tainted plan assets satisfies the 'appropriateness' criterion in § 502(a)(3)." *Id.* at 253 (alteration omitted); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("([A]ssuming nonfiduciaries can be sued under § 502(a)(3)) [professional service providers] may be enjoined from participating in a fiduciary's breaches, compelled to make restitution, and subjected to other equitable decrees.")

Under *Harris* then, to state a claim under Section 502(a)(3) against a non-fiduciary, "a plaintiff who is a 'participant, beneficiary, or fiduciary' must prove both (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan, *see Mertens*, 508 U.S. at 254; and (2) that the relief sought is 'appropriate equitable relief,' 29 U.S.C. § 1132(a)(3)(B)." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014). Moreover, under *Harris*, the non-fiduciary must have "actual or constructive knowledge" of the circumstances that rendered any prohibited transaction wrongful. *See Kalan v. Farmers & Merchants Tr. Co. of Chambersburg*, No. CV 15-1435, 2016 WL 3087360, at *1 (E.D. Pa. June 2, 2016).

## III. DISCUSSION

The Court allowed Plaintiffs to amend the Second Amended Complaint only on one ground: to seek relief from LSW and Logan on alleged violations of ERISA § 502(a)(3). To state a § 502(a)(3) claim against non-fiduciaries such as LSW and Logan, Plaintiffs must plead sufficient facts supporting the following elements: "(1) funds rightfully belonging to a plan were wrongfully transferred to the non-fiduciary; (2) the non-fiduciary had 'actual or constructive knowledge' of the circumstances that rendered the transfer wrongful; and (3) the [plaintiff] seeks appropriate equitable relief." *Kalan*, 2016 WL 3087360, at *1 (citing Harris, 530 U.S. at 251). LSW and Logan challenge the TAC's allegations as to all three elements and argue that Plaintiffs have not sufficiently pled that there was an underlying fiduciary violation; that LSW or Logan has actual or construction

knowledge of any wrongdoing; or that appropriate equitable remedy is available. *See* Mot. to Dismiss Third Am. Compl. ("Mot.") at 18-24, ECF 231.

### A. Underlying Violations of ERISA by 4Cs Defendants

LSW and Logan assert that Plaintiffs have failed to state a claim for underlying ERISA fiduciary violations. *See* Mot. at 18-24. ERISA's Section 502(a)(3) is a "catchall" provision, and a "safety net offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Bush v. Liberty Life Assurance Co. of Bos.*, 77 F. Supp. 3d 900, 908 (N.D. Cal. 2015) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). To that end, "§ 502(a)(3) does not authorize 'appropriate equitable relief' *at large*, but only for the purpose of redressing any violations or enforcing any provisions of ERISA or an ERISA plan." *Harris*, 530 U.S. at 246 (internal quotation omitted).

First, LSW and Logan argue that Plaintiffs have failed to state a claim against them based on 4Cs Defendants' violations of ERISA § 404(a)(1)(B). *See* Mot. at 18-20. Section 404(a)(1)(B) requires fiduciaries to act with "care, skill, prudence, and diligence[.]" 29 U.S. C. § 1104. Plaintiffs respond that the 4Cs Defendants violated § 404(a)(1)(B) because they (1) purchased LSW annuities contrary to the terms of a Summary Plan Description published in 1987, (2) purchased the LSW annuities in the absence of a written instrument permitting such a purchase, and (3) did not engage in competitive bidding or RFP process to determine if the fees paid to LSW and Logan were reasonable. Opposition ("Opp'n") at 11-12, ECF 238 (citing TAC ¶¶ 55-56, 65, 72, 163, 170).

The Court is satisfied—and LSW and Logan do not challenge—that Plaintiffs have sufficiently pled that the 4Cs Defendants purchased LSW annuities contrary to the terms of a Summary Plan Description and in the absence of a written instrument.[5] *See generally* Mot. The section 502(a)(3) claim, nevertheless, fails because the allegations in the TAC lack sufficient facts to support the other two elements of a § 502(a)(3) claim (*i.e.*, knowledge and equitable relief) as discussed in detail below.

Plaintiffs further allege that the 4Cs Defendants violated ERISA because they failed to obtain

---

[5] Section 402(a)(1) requires every ERISA employee plan to be "established and maintained pursuant to a written instrument." 29 U.S. C. § 1102.

7

competitive bids for the LSW annuities. The Court is not persuaded that the 4Cs Defendants were under an obligation to engage in competitive bidding or RFP process. *See White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *14-15 (N.D. Cal. Aug. 29, 2016) (finding "no legal foundation" for allegations that plan fiduciaries were "required to solicit competitive bids on a regular basis"). Plaintiffs also claim that 4Cs Defendants violated ERISA by paying unreasonable compensation. But, Plaintiffs have not sufficiently pled that LSW and Logan's compensation was unreasonable. The TAC alleges that between 2010 and 2012, LSW and Logan received "as much, if not more than $75,788.00," which according to Plaintiffs, was "unreasonable compensation" and "in excess of market rates." *See*, TAC ¶¶ 164-65, 171-72. The Court agrees with Defendants that these allegations are conclusory. *See* Mot. at 18-19. The TAC fails to provide any benchmark as to what "reasonable" compensation would have been for comparable annuities. As was the case in *White*, Plaintiffs do not even allege that a competitive bid would have benefitted the 4Cs Plans or its participants, "because they do not allege any facts from which one could infer that the same services were available for less on the market." *Id.* at *14. Thus, absence of competitive bidding or RFP process, without more, does not support Plaintiffs' allegations that the 4Cs Defendants acted imprudently in violation of § 404(a)(1)(B).

Second, LSW and Logan argue that Plaintiffs have failed to state a claim against them based on 4Cs Defendants' violation of ERISA § 406(a)(1)(B). Mot. at 21-24. Section 406(a)(1) prohibits certain transactions between an ERISA plan and a party-in-interest. 29 U.S. C. § 1106. Plaintiffs respond that the TAC's allegations establish a plausible theory that the 4Cs Defendants engaged in one or two types of prohibited transactions under ERISA § 406(a)(1). Opp'n at 12-15. Specifically, Plaintiffs discuss the following prohibited transactions (1) "lending of money or other extension of credit between the plan and a party in interest" under § 406(a)(1)(B) and (2) "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" under § 406(a)(1)(D). *See* 29 U.S.C. § 1106(a)(1)(B); 1106(a)(1) (D). Plaintiffs point to the following alleged facts in support of their argument that 4Cs Defendants engaged in prohibited transactions involving LSW and Logan: (1) the purchase of LSW annuities was an imprudent decision, (2) the purchase of the LSW annuities was not permitted under any written instrument governing the 4Cs Plans, (3) the commissions, fees

1 and other compensation paid benefited both Logan and LSW, and (4) LSW and Logan used the
2 premium payments on each annuity account to generate other revenue and investment earnings for
3 their own benefit. Opp'n at 13-14 (citing TAC ¶¶ 55-56, 75, 138, 143, 165, 173).

4 As for Plaintiffs' "loan" theory under § 406(a)(1)(B), the TAC alleges that "LSW has used premium payments received from the 4Cs Plans to generate other revenue and investment earnings" and that those payments "constitute[d] an unlawful lending of money or extension of credit by the 4Cs Plans to LSW." TAC ¶ 173; *see also id.* ¶ 165. LSW and Logan challenge Plaintiffs' characterization of premium payments as "loans or extensions of credit" because the TAC lacks any allegations about "terms of such loans, how or when they were paid back, or even that LSW had an obligation to pay them back." Mot. at 21. Plaintiffs respond that because the purchase of LSW annuities were not permitted by a written instrument, LSW and Logan "never had any legal possessory or ownership interest in these funds" and thus each payment they received was an "indirect loan" which they used "to generate their own profits." Opp'n 14-15.

Plaintiffs' far-fetched "loan" theory has no basis in law. LSW and Logan received insurance premiums and fees – none of which were subject to any repayment obligations. *See* Black's Law Dictionary (11th ed. 2019) (defining "loan" as "a grant of something for temporary use" or "a thing lent for the borrower's temporary use). Even though Plaintiffs may be correct that a "formal loan agreement" is not required, premium payments do not become loans just because Plaintiffs characterize them as such. *See* Opp'n at 14-15. To the extent that Plaintiffs' allegations of a "loan" are limited to premiums, commissions, and fees paid to LSW and Logan, Plaintiffs may not include them in their next amended complaint.

As for the "transfer or use" theory under § 406(a)(1)(D), Plaintiffs point to the same facts in the TAC and argue that LSW and Logan "had no legal possessory or ownership interest in [monies from the 4Cs Plans], and yet, they used them to their own benefit by using them to generating profits and investment earnings" in violation of § 406(a)(1)(D). Opp'n at 15 (citing TAC ¶¶ 164, 173). The Court notes that an underlying fiduciary violation of § 406(a)(1)(D) is not alleged in the TAC's claims against Logan and LSW. *See* TAC ¶¶ 161-77. In any event, this theory also fails because the TAC lacks sufficient allegations to support that LSW and Logan had actual or constructive

9

knowledge that the prohibited transactions were unlawful, and that appropriate equitable remedy is available. The Court discusses each issue in turn.

### B. LSW and Logan's Knowledge of Wrongdoing

Under *Harris*, the non-fiduciary must have "actual or constructive knowledge" of the circumstances that rendered any prohibited transaction unlawful. *Harris*, 530 U.S. at 251. The TAC fails to allege facts that support such knowledge. Plaintiffs seemingly equate knowledge of "prohibited transaction" with knowledge of unlawful conduct. To support their theory of "constructive knowledge," Plaintiffs point to the following allegations: LSW and Logan (1) knew they were dealing with an employer-sponsored retirement plan regulated by ERISA, (2) received unreasonable monetary payments from the 4Cs Plans, and (3) never participated in any competitive bidding or RFP procedures. *See* Opp'n at 16; TAC ¶¶ 167-180. These allegations, however, fail to establish knowledge or constructive knowledge under *Harris*.

ERISA § 406(a)'s prohibited transactions are broad, and they apply to many common transactions ERISA plans routinely engage in. *See, e.g., Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008) ("ERISA § 406(a) begins with the premise that virtually all transactions *between a plan and a party in interest* are prohibited, unless a statutory or administrative exemption applies."). ERISA § 408(b) then provides for a broad range of statutory and administrative exemptions for § 406(a) prohibitions. For example, fiduciaries are permitted to make "reasonable arrangements with a party in interest" for "services necessary for the establishment or operation of the plan" so long as "no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2).

Thus, mere knowledge that a transaction is (or might be) "prohibited" under ERISA § 406(a) does not mean that Logan or LSW knew or should have known of any wrongdoing, as required under *Harris*. *See* 530 U.S. at 251. More specifically on the facts on this case, Plaintiffs were required to allege facts supporting a plausible inference that LSW and Logan ***knew or should have known*** that the 4Cs Defendants purchased LSW's annuities in the absence of a written instrument, that the LSW annuities were otherwise imprudent, or that the fees received were unreasonable. The TAC is devoid of any facts supporting a plausible inference that that LSW or Logan knew or should

10

have known that the LSW annuities were purchased in the absence of a written instrument or that the annuities were otherwise imprudent.

And as for the fees paid to LSW and Logan, the Court explained above that (1) the TAC's allegations of "unreasonable compensation" are conclusory and (2) absence of competitive bidding and RFP procedures, without more, does not support an inference of unreasonable fees. It is Plaintiffs' obligation to plead facts to make a plausible claim for relief – specifically, that the 4Cs Defendants paid LSW and Logan unlawfully excessive fees and that LSW and Logan knew or should have known that those fees were excessive. Absent factual allegations of some guidepost for reasonable market rates, Plaintiffs have failed to state this claim. *See Iqbal*, 556 U.S. at 678. Plaintiffs have failed to do so.

LSW and Logan also take issue with Plaintiffs' allegations based on "information and belief" that the compensation they received was "unreasonable" and in "excess of market rates" for comparable annuities. Mot. at 19 (citing TAC ¶ 171). The Ninth Circuit has held that the *Iqbal*/*Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief. *See Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citing *Arista Record LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)). An allegation made on information and belief is sufficient where (1) the facts are peculiarly within the possession and control of the defendant, (2) or the belief is based on factual information that makes the inference of culpability plausible. *Id.; see also Menzel v. Scholastic, Inc.*, No. 17-CV-05499-EMC, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018) (noting that even where the evidence is within the defendant's control, plaintiff still must allege specific facts which on information and belief make the inference of culpability plausible). On the facts of this case, the Court agrees with LSW and Logan. Facts supporting the allegations of unreasonable compensation (*e.g.*, market rates for comparable services) were not "peculiarly within the possession and control" of LSW and Logan. Plaintiffs could have accessed such public information and alleged relevant facts accordingly.

Finally, Plaintiffs assert that LSW and Logan "had a common-sense obligation to inquire into whether or not the purchase of these annuities was consistent with the terms of a ERISA-mandated written instrument." Opp'n at 17. Unsurprisingly, Plaintiffs provide no authority that

11

imposes such obligation on LSW and Logan. Plaintiffs' argument is more akin to a further attempt to impose a fiduciary duty on LSW and Logan, who are ***non-fiduciaries***.

***

In sum, the TAC fails to plead facts sufficient to make a plausible claim that LSW and Logan knew or should have known that the 4Cs Defendants purchased LSW annuities in violation of ERISA.

### C. Equitable Relief

Because Section 502(a)(3) allows plaintiff to seek only "appropriate equitable relief," courts must closely analyze whether the requested relief is legal relief, such as money damages, or equitable relief. "To qualify as 'equitable relief,' both '(1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought' must be equitable rather than legal." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir. 2019) (citing *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S.Ct. 651, 657 (2016)). In *Depot*, the Ninth Circuit warned that "[a]lmost invariably suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages'"—the "classic form of legal relief." *Id.* at 661 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)).

Indeed, even claims labeled as "restitution" or "disgorgement" may not be equitable in nature. The Ninth Circuit explained the difference between restitution in equity and restitution in law: "A plaintiff seeks 'restitution at law' when the plaintiff cannot 'assert title or right to possession of particular property' but instead seeks to 'impose personal liability on the defendant' as a means of 'recovering money to pay for some benefit the defendant . . . received from [the plaintiff].'" *Depot*, 915 F.3d at 661 (quoting *Great-West*, 534 U.S. at 213–14). "By contrast, a plaintiff seeks 'restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Id.* (quoting *Great-West*, 534 U.S. at 213) (alteration in original).

In *Depot*, the Ninth Circuit held that the plaintiffs had not alleged that their request for restitution of premium surcharges was equitable relief for many reasons, including that they had not

1    identified a specific fund to which they were entitled and that they never alleged the existence of a
2    general account in which the ill-gotten funds were commingled. *Depot*, 915 F.3d at 662–63. The
3    Ninth Circuit also rejected the plaintiffs' disgorgement theory given the "absence of any particular
4    property" in the case. *Id.* at 664–65. To that end, even if a defendant "once possessed a separate,
5    identifiable fund to which the lien attached, but then dissipated it all[,]" an equitable lien cannot be
6    enforced against defendant's general assets because "those assets were not part of the specific thing
7    to which the lien attached." *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit
8    Plan*, 136 S. Ct. 651, 659 (2016).

### 1. As to LSW

Defendants argue that Plaintiffs have failed to plead facts to show that appropriate equitable relief is available. Mot. at 20. Plaintiffs respond that they are seeking "a return of the monies actually paid to [LSW and Logan] – nothing more." Opp'n 18. A careful reading of the TAC, however, shows that Plaintiffs seek more. Plaintiffs ask for the return of "all unreasonable commissions, retained surrender charges, revenues, investment earnings and all other forms of compensation received from the 4Cs Plans." TAC ¶ 174. Additionally, Plaintiffs seek an award of "reasonable investment rate of return that could have otherwise been achieved on all revenues, investment earnings, commissions or other forms of compensation paid to and retained by LSW and Logan." *Id.* ¶ 177.

The TAC fails to sufficiently plead that the funds Plaintiffs seek are traceable. Plaintiffs request equitable relief to be paid from "any annuity account or general account to which such compensation has been deposited and is thus traceable." TAC ¶ 174. But, as LSW notes, Plaintiffs do not state facts to indicate that the funds they are seeking are, in fact, traceable. Mot. at 20. Plaintiffs must identify a "specific fund" to which they are entitled to, and they have not done so here. *See* Depot, 915 F.3d at 662.

Moreover, the TAC seeks the return of the "unreasonable" portion of funds received by LSW – but fails to allege what those "unreasonable" amounts are and how they can be traced. The Court agrees with LSW that Plaintiffs' request for return of "unreasonable" compensation is not linked to a specific account – and thus is legal in nature, not equitable. *See* Reply at 11-12, ECF 239; *see also*

13

*Depot*, 915 F.3d at 662 (finding that plaintiffs had not identified a "specific fund" where plaintiffs sought "not a specific thing but instead some unidentified portion of the many premium payments that exceeded 'reasonable compensation'").

That said, Plaintiffs, in their opposition brief, rely on language in the 4Cs annuity application materials to argue that the funds they are seeking are specifically identifiable because the annuity contracts maintain a specific "premium account," for each participant in which the premiums are deposited and is separate from the "interest account." Opp'n at 18. For its part, LSW admits that "there were separate Premium Accounts and Interest Accounts" but argues that "those are not the funds Plaintiffs seek." Reply at 11. The Court agrees with LSW that the TAC seeks more than the return of the premiums paid (*e.g.*, revenues, investment earnings and all other forms of compensation received from the 4Cs Plans), for which Plaintiffs have not identified a "specific fund" as required. But, to the extent that Plaintiffs are seeking the return of their insurance premiums, the Court agrees that those funds should be traceable to each annuity account.

\*\*\*

In sum, the TAC fails to allege that equitable relief is proper as to Plaintiffs' requests for monetary relief against LSW—except for return of the insurance premiums. Thus, the Court GRANTS LSW's motion to dismiss WITH LEAVE TO AMEND.

**2. As to Logan**

From Logan, Plaintiffs seek to recover "all unreasonable commissions and other compensation received therefrom which are traceable to a general account held in the name of Logan, Logan Group Securities or LSW." TAC ¶ 166. Equitable restitution may only be recovered from specifically identifiable funds within a defendant's possession and control – not from defendant's assets generally. *See Sereboff v. Mid Atl. Med. Servs.*, Inc., 547 U.S. 356, 362 (2006). Plaintiffs have failed to specifically identify any funds within Logan's control that traces to the 4Cs Plans' assets. Instead, they generically point to "unreasonable compensation" that is somehow "traceable" to "a general account held in the name of Logan, Logan Group Securities or LSW." TAC ¶ 166. This is not enough.

Logan has been an insurance agent for LSW since 2003. TAC ¶ 30. Logan sold life

14

insurance annuities to 4Cs Plans and was paid in fees and commissions for his services. *Id.* ¶¶ 31-34. There are no plausible allegations in the TAC that Logan maintained the commissions and fees he received in the past sixteen years (which presumably were his income) in a specifically-identifiable account. Plaintiffs' request for relief from Logan is for legal damages, and not equitable relief. *See Depot*, 915 F.3d at 644 ("[A] constructive trust may be imposed only where the plaintiff's funds are themselves located and identified or where they are traced into other funds or property.") (citation omitted).

Plaintiffs were given an opportunity, with clear guidance from this Court, to amend their Second Amended Complaint to add a viable Section 502(a)(3) claim against Logan. *See* SAC Order at 10-13. They have failed to do. Thus, Logan's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

## IV. JUDICIAL NOTICE

Courts may take judicial notice of documents referenced in the complaint, as well as matters in the public record. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Plaintiffs attached three exhibits to their opposition brief: (1) Exhibit A, 4Cs Retirement Plan Detail Sheet, (2) Exhibit B, 4Cs Board of Directors Meeting Minutes for July 18, 2013, and (3) Exhibit C, 4Cs Employee Pension Plan Summary Plan Description. LSW and Logan ask the Court to strike all document attached to the opposition brief and all arguments made on the basis of those documents because they were not included in the TAC. Reply at 12. These documents are not relevant to the issues decided by the Court and therefore, the Court has not relied on them (or Plaintiffs' arguments based on them) in reaching its decision.

## V. ORDER

Based on the forgoing, the Court orders as follows: (1) LSW's motion to dismiss is GRANTED WITH LEAVE TO AMEND and (2) Logan's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND. Plaintiffs may amend only to add facts supporting a claim under Section 502(a)(3) against LSW.

The Court notes that at the Hearing, LSW's counsel informed the Court that LSW has

recently transferred the annuities in 4Cs Plans to a different provider at 4Cs' request. Any amended complaint must address this issue and specifically, whether equitable relief can be alleged against LSW if it no longer is in possession of the funds Plaintiffs seek and whether an injunction against LSW is needed.

Plaintiffs must submit a redlined document comparing their Fourth Amended Complaint to the TAC. Plaintiffs may not add new parties or any other claims. Plaintiffs are also expected to remove allegations and claims that have been previously dismissed, including any demands for relief against LSW based on claims in which LSW is not named. Any motion to dismiss the Fourth Amended Complaint (and the opposition thereto) is limited to 15 pages and the reply is limited to 8 pages. Plaintiffs' Fourth Amended Complaint is due no later than **January 15, 2020**.

**IT IS SO ORDERED.**

Dated: December 16, 2019

_____
BETH LABSON FREEMAN
United States District Judge