UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIO DEL CASTILLO, et al.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMUNITY CHILD CARE COUNCIL OF SANTA CLARA COUNTY, INC., et al.,<br><br>　　　　Defendants. | Case No. 17-cv-07243-BLF<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**<br><br>[Re: ECF Nos. 275, 276] |

Before the Court are (1) Plaintiffs' Motion for Final Approval of Class Action Settlement; and (2) Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments. *See* ECF Nos. 275 ("Fees Mot."), 276 ("Final App. Mot.") (collectively, "Motions"). No oppositions have been filed and there are no objectors. *See* ECF No. 281 ¶¶ 8-10. The Court held a hearing on the motions on October 14, 2021. For the reasons stated on the record and explained below, the Court GRANTS both motions.

**I.　BACKGROUND**

Plaintiffs Mario Del Castillo, Puthea Chea, and Michael Rasche filed this action on December 21, 2017, asserting violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), on behalf of themselves and others similarly situated. *See* ECF No. 1. Plaintiff Javier Cardoza was added to the case in an amended complaint. *See* ECF No. 176. In the operative complaint, Plaintiffs alleged that Defendants Community Child Care Council of Santa Clara County, Inc. ("4Cs"), its Board of Directors, Ben Menor, Xiaoyan Xu, Clarance Madrilejos, James McDaniel, Julienne La Fitte, Jaime Gallardo, and Faye Sears, in their official capacities as current

and former trustees, and its former Executive Direct Alfredo Villasenor (collectively "4Cs Defendants"), along with Defendant Life Insurance Company of the Southwest ("LSW"), violated ERISA with their handling of 4Cs employee pension plans ("4Cs Plans"). *See* ECF No. 229. Plaintiffs alleged, *inter alia*, that the 4Cs Defendants had failed to keep required documentation of the 4Cs Plans and improperly purchased restrictive annuity accounts from Defendant Life Insurance Company of the Southwest, which led to damages to Plaintiffs, including the payment of withdrawal and transfer fees. *Id.*

Between the filing of the first complaint and the end of 2019, the parties went through three rounds of motions to dismiss. On December 16, 2019, the Court granted LSW's motion to dismiss Plaintiffs' Third Amended Complaint with one additional opportunity to amend as to LSW. *See* ECF No. 256. On January 8, 2020, the Court was informed that the parties had reached a settlement. *See* ECF No. 260.

On March 1, 2021, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. ECF No. 263. The Court held a hearing on the Motion on April 22, 2021, where the Court requested revisions to the settlement agreement, notice, and proposed order. *See* ECF No. 266. Plaintiffs filed revised papers on May 27, 2021 and June 2, 2021. *See* ECF Nos. 269-70. The Court held a hearing on the Motion and the revised papers on June 3, 2021, where it requested further revisions to the revised settlement agreement, notice, and proposed order. *See* ECF No. 271. Plaintiffs filed revised versions of the papers on June 10, 2021. *See* ECF No. 273. The Court granted Plaintiffs' motion for preliminary approval based on the revised papers on June 11, 2021. *See* ECF No. 274.

The Settlement Agreement defines the settlement class as follows:

> [A]ll current and former participants and beneficiaries of the Plans at any time during the period October 1, 1987 through and including December 31, 2019, excluding the Individual Defendants.

ECF No. 273-1 ("Settlement Agreement") § 1.36. The Settlement Agreement defines "Plans" as "the 4Cs Defined Contribution Profit Sharing Plan (individually the 'Qualified Plan') and the 4Cs Non-qualified Deferred Compensation Pension Plan (individually the 'Non-qualified Plan'), together with their predecessors and successors, and any trust created under such plans." *Id.* § 1.25.

2

1   The Settlement Agreement provides for a Settlement Fund of $317,500. *Id.* § 7.1. The Settlement
2   Agreement also provides for attorneys' fees capped at $110,125, *id.* § 1.3, settlement administration
3   expenses of approximately $6,250, *id.* § 1.34, attorney costs capped at $9,876, *id.* § 1.10, and an
4   enhancement award of $5,000 to each of the four class representatives, for a total enhancement
5   award of $20,000. *Id.* § 1.16. After attorneys' fees, costs, settlement administrator expenses, and
6   enhancement awards are deducted from the Settlement Fund, the Settlement Agreement provides
7   that the remaining amount is to be used to reimburse the fees class members were required to pay
8   to access funds in the LSW annuities. *Id.* § 2.5. After the LSW fees are reimbursed, the Settlement
9   Agreement provides that the remainder of the settlement amount is to be distributed to the remaining
10  members, who can opt for a deposit into a retirement account or a direct payment. *Id.* If there is
11  more than $5,000 that cannot be distributed 30 days after the first distribution, the Settlement
12  Agreement provides that the settlement administrator will make a second distribution to class
13  members whose addresses are confirmed. *Id.* If there is less than $5,000 following the second
14  distribution, the Settlement Agreement provides that the remainder will be distributed to the *cy pres*
15  recipient, East Bay Community Law Center. *Id.* The Settlement Agreement indicates that class
16  members can opt out of the settlement by mailing a request to the Settlement Administrator 60 days
17  after the mailing of the notice packet, or after an additional 10 days if the notice packet is remailed.
18  *Id.* § 2.6.2. The Settlement Agreement indicates that class members can object to the settlement by
19  notifying the Court on the same timeline. *Id.*

20  In its motion for preliminary approval, Class Counsel represented that there are
21  approximately 145 putative class members. *See* ECF No. 263 at 19. Following preliminary
22  approval, Class Counsel discovered that there are approximately 337 settlement class members—
23  more than double the original estimate. *See* ECF No. 276-1 ¶ 3. Since the Settlement Administrator
24  Simpluris had based its bid on Class Counsel's original estimate, they revised their bid for
25  Settlement Administrator costs from $6,250 to $10,000. *See id.* ¶ 4.

26  Following preliminary approval, the Settlement Administrator provided notice by mail to all
27  but one—336 out of 337—settlement class members. *See* Final App. Mot. at 2. No settlement
28  class members opted out of the class, and no objections were filed with the Court. *See* ECF No. 281

¶¶ 8-10.

On October 14, 2021, the Court heard both Motions. During the hearing, the Court indicated that paragraph 13 of the Declaration of Norman Alcantara In Support of Plaintiffs' Motion for Final Approval was misleading, because it lumped together (1) the amounts to be distributed to settlement class members that paid LSW surrender fees ("Fee Members") and (2) the amounts to be distributed to the remaining members of the settlement class who did not pay any LSW surrender fees ("Non-Fee Members"). *See* ECF No. 276-2 ¶ 13. The Court indicated that the Alcantara Declaration could lead Non-Fee Members to expect a higher recovery, since the average distribution for Fee Members is higher than it is for Non-Fee Members. On October 14, 2021, Plaintiffs filed a revised Alcantara Declaration breaking out distributions by Fee Members and Non-Fee Members:

> All members of the settlement class who paid withdrawal fees will be reimbursed, and all members of the settlement class will receive at least $190.79. The highest estimated payment to reimburse withdrawal fees is $6,760.24 and the lowest estimated payment is $204.71. Settlement class members who were not reimbursed a withdrawal fee, or who had withdrawal fees lower than $190, will receive $190.79.

ECF No. 281 ¶ 13.

## II.   MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.   Rule 23 Certification Requirements

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

#### i.   The Class Meets the Requirements for Certification Under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

4

|   |   |
|---|---|
| (3) | the claims or defenses of the representative parties are typical of the claims or defenses of the class; and |
| (4) | the representative parties will fairly and adequately protect the interests of the class. |

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3), Final App. Mot. at 8, which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When it granted preliminary approval of this class action settlement, this Court concluded that these requirements were satisfied. *See* ECF No. 274 ¶ 4. The Court is not aware of any facts that undermine that conclusion, but reviews briefly each of the Rule 23 requirements again.

Under Rule 23(a), the Court concludes that joinder of all 337 class members would be impracticable under the circumstances of this case. *Rannis v. Recchia*, 380 Fed.Appx. 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."). The commonality requirement is met because the key issue in the case is the same for all class members—whether Defendants violated ERISA with their handling of the 4Cs Plans. The claims of the class representatives are typical of those of the Settlement Class, as they have been injured by Defendants' ERISA violations and all assert the same claims and request the same damages. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality requires that the claims of the class representatives are "reasonably co-extensive with those of absent class members"). Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 975 (9th Cir. 2011) (internal citations omitted). There is no evidence of any conflict of interest that would preclude Plaintiffs from acting as class representatives or their counsel from acting as Class Counsel. Nor is there evidence that Class Counsel has failed to vigorously litigate this action on behalf of the class.

Now turning to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common question in this case—whether Defendants violated ERISA in their handling of the 4Cs employee pension plans—predominates over individual questions among the class members. Given the commonality and the number of class members, the Court concludes that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate.

### ii. The Settlement is Fundamentally Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* at 819 (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon*. Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d

1  at 1026). "A presumption of correctness is said to 'attach to a class settlement reached in
2  arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re*
3  *Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005)
4  (quoting *Manuel for Complex Litigation* (Third) § 30.42 (1995)).

                a. Notice Was Adequate

6        The Court previously approved Plaintiffs' plan for providing notice to the settlement class
7  when it granted preliminary approval of the class action settlement. *See* ECF No. 234. Prior to
8  granting preliminary approval, the Court carefully examined the proposed class notice and notice
9  plan, and determined that they complied with Federal Rule of Civil Procedure 23 and the
10 constitutional requirements of Due Process. *See id.* ¶ 8. Plaintiffs now provide a declaration from
11 the Project Manager at the Settlement Administrator explaining the implementation of the plan. *See*
12 ECF No. 281. Based on that declaration, notice was provided to all but one settlement class
13 member, including 35 members whose notice had to be remailed to a different address after the
14 initial notice was returned as undeliverable. *Id.* ¶ 7; *see also* Final App. Mot. at 2. "[N]otice plans
15 estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." *Edwards*
16 *v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June
17 26, 2017). Because notice here reached nearly every settlement class member, the Court is satisfied
18 that notice was adequate and that class members were provided with the best notice practicable
19 under the circumstances.

20                 b. *Hanlon* Factors

21       To determine if the settlement is fair, reasonable, and adequate, the Court now turns to the
22 *Hanlon* factors. First, the Court must consider the strength of Plaintiffs' case, weighing the
23 likelihood of success on the merits and the range of possible recovery. Second, the Court must
24 consider the risk, expense, complexity, and likely duration of litigation. Plaintiffs' ERISA claims
25 appear viable on their face, *see* ECF No. 229, and the 4Cs Defendants declined to move to dismiss
26 Plaintiffs' third amended complaint. *See* ECF Nos. 233-34. But Plaintiffs faced significant risks
27 throughout litigation. For example, the closure of 4Cs was a major risk that ultimately materialized
28 following settlement. *See* Final App. Mot. at 10. By the time of the settlement, Plaintiffs had gone

through three rounds of motions to dismiss, and their claims against LSW had been dismissed with leave to amend only one additional time. *See* ECF No. 256 at 1. Additionally, the 4Cs Defendants and Defendant Alfredo Villasenor raised many defenses in their answers. *See* ECF Nos. 233-34. Based on the lengthy and costly pleading stage alone (which may not even have been complete at the time of settlement), this case would likely have been risky, expensive, complex, and lengthy in spite of Plaintiffs' facially viable claims.

Under the third *Hanlon* factor, given the common questions of law and fact in this case, it is likely that the class would have been certified had the case progressed, but Plaintiffs would have likely faced significant opposition. *See* Final App. Mot. at 10.

Fourth, the monetary value of the settlement is substantial, considering that it is around half of Plaintiffs' damages. Final App. Mot. at 11; *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015); *see also* ECF No. 263 at 24-25; ECF No. 263-1 ¶ 17. Further, the value of the settlement does not include the significant nonmonetary benefits that Plaintiffs obtained for putative class members during the litigation. Final App. Mot. at 11-12.

Considering the fifth *Hanlon* factor, the case was still at the pleading stage prior to settlement, so little formal discovery had taken place. *See* ECF No. 263 at 26. However, Plaintiffs engaged in informal discovery and located several internal documents that informed the settlement negotiations, including a document Plaintiffs construed as the controlling document for the 4Cs Plans. *See, e.g.*, ECF No. 263 at 10; ECF No. 275-3 ¶¶ 4-5.

Under factor six, Class Counsel consists of highly experienced ERISA and class action litigators. ECF No. 275-1 ¶¶ 2-6.

Factor seven is irrelevant, because there was no government participant in this action.

Factor eight—the reaction of class members to the settlement—substantially supports approval. Out of the 336 of 337 class members that received the notice, none opted out or objected to the settlement. Final App. Mot. at 2, 7. "A court may properly infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Knapp v. Art*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017).

1          After considering the record under the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and that the settlement is fair, adequate, and reasonable.

\*   \*   \*

Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

### III.  MOTION FOR ATTORNEYS' FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATION EXPENSES

Plaintiffs seek an award of $110,125 in attorneys' fees, $9,645.55 in costs, a $20,000 service award, and $10,000 in settlement administration expenses. *See* Fees Mot. at 2; ECF No. 281 ¶ 14.

#### A.   Attorneys' Fees and Expenses

##### i.   Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 F.3d at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work;

(4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. ... [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### ii. Discussion

Plaintiffs seek an award of attorneys' fees totaling $110,125, Fees Mot. at 2, which is approximately 34.7% of the $317,500 Settlement Fund. Settlement Agreement § 7.1. Plaintiffs also request $9,645.55 in costs. Fees Mot. at 2.

The Court first approves the $9,645.55 in costs. The Court has reviewed Class Counsel's

itemized lists of costs and finds that all of the expenses were necessary to the prosecution of this litigation. *See* ECF No. 275-1 ¶ 17; *id.*, Ex. 1.

The Court also finds the amount of attorneys' fees to be reasonable. A lodestar cross-check supports the reasonableness of the fees requested. Class Counsel states that the total lodestar from inception of this case through settlement is $327,691. ECF No. 275-1 ¶ 14. The hourly rates charged by Class Counsel have been approved by multiple courts across California, and the Court finds the number of hours expended to be reasonable. *See* Fees Mot. at 5 (listing cases). Using $327,691 as the lodestar results in a negative multiplier, with Plaintiffs requesting attorneys' fees that are approximately one-third of the lodestar. Fees Mot. at 6. "A negative multiple 'strongly suggests the reasonableness of [a] negotiated fee.'" *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-cv-07087-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sep. 10, 2021) (quoting *Rosado v. eBay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016)). Under the percentage-of-recovery method, the attorneys' fees Class Counsel is requesting are 34.7% of the $317,500 gross Settlement Fund, which is above the 25% "benchmark" in this circuit. *Bluetooth*, 654 F.3d at 942. However, the Court finds the requested attorneys' fees reasonable under the circumstances. *Vizcaino*, 290 F.3d at 1048. The negative multiplier for Class Counsel's lodestar is substantial. *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2017 WL 6493091, at *13 (N.D. Cal. Dec. 19, 2017). Class Counsel obtained monetary and nonmonetary relief for putative class members prior to the settlement. Fees Mot. at 3; *Vizcaino*, 290 F.3d at 1049-50 (affirming finding of reasonable attorneys' fees where "the court found that counsel's performance generated benefits beyond the cash settlement fund."). The litigation was hard-fought, with three rounds of motions to dismiss having taken place by the time the litigation settled. Fees Mot. at 6. And as outlined above, the risks of litigation were considerable, particularly the dissolution of 4Cs that ultimately did materialize post-settlement. *See* Final App. Mot. at 10. Further, ERISA provides for attorneys' fees. 29 U.S.C § 1132(g)(1); *Norris*, 2017 WL 6493091, at *10. Considering the circumstances around the settlement, the Court finds that the requested fee amount is reasonable.

### B. Service Award

Plaintiffs seek a service award of $20,000—$5,000 for each of the four class representatives:

Mario Del Castillo, Puthea Cha, Michael Rasche, and Javier Cardoza. Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

Mario Del Castillo's declaration explains that he brought the alleged violations at issue in the case to the attention of Class Counsel. ECF No. 275-3 ¶ 3. Mr. Del Castillo also describes how he met with other potential putative class members before the case was filed to discuss issues with 4Cs retirement plans and asked 4Cs for information. ECF No. 275-3 ¶ 4. Mr. Del Castillo provided his findings to Class Counsel and regularly met with them throughout the case, and he helped interface with putative class members, including by putting Class Counsel in contact with Javier Cardoza. ECF No. 275-3 ¶¶ 8-10. Puthea Cha's declaration outlines efforts to assist Class Counsel with factfinding and communicating with putative class members, including by gathering names and contact information of potential putative class members, passing out and collecting papers pertaining to the lawsuit during lunch and breaks, and interfacing with putative class members about the status of the case. ECF No. 275-5 ¶¶ 5-8. Javier Cardoza's and Michael Rasche's declarations describe how they assisted Class Counsel in investigating the putative class's claims, gathering documents in their possession, and participating in phone calls to discuss their experience and the status of the case. *See* ECF Nos. 275-2, 275-4.

The Court finds that the class representatives expended considerable effort that substantially benefitted the putative class prior to and throughout the case and settlement process. However, the Court finds the requested service award of $5,000 for each of the four class representatives to be excessive. While courts in this district have found a $5,000 service award to be presumptively reasonable, *see, e.g.*, *In re LinkedIn User Privacy Lit.*, 309 F.R.D. 573, 592 (N.D. Cal. Sep. 15, 2015), they have also factored in the settlement amount in considering the acceptable range of service awards. *Chu v. Wells Fargo Investments, LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) (finding $10,000 service award for each of four class representatives excessive for $6.9 million settlement); *Jacobs v. Cal. State Auto. Ass'n Inter-Ins.*

*Bureau*, No. C 07-00362 MHP, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) (finding $25,000 service award for single class representative "quite high for this district"); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (district court must "consider the proportionality between the incentive payment and the range of class members' settlement awards."). The Court finds a $5,000 service award for each of the four class representatives to be on the high end of acceptable service awards, particularly given that the Settlement Fund here is only $317,500. The Court approves a $2,500 service award for each of the four class representatives, for a total service award of $10,000.

### C. Settlement Administrator Fee

Finally, the Court finds that the $10,000 Settlement Administrator Fee is reasonable in this case. The fee exceeds the approximately $6,250 Settlement Administrator Fee referenced in the Revised Settlement Agreement preliminarily approved by the Court. Settlement Agreement § 1.34. When Class Counsel originally requested bids from potential administrators, they thought that the settlement class contained 145 members. ECF No. 276-1 ¶¶ 3-4. The Settlement Administrator based its original $6,250 fee on a class size of 145. *Id.* ¶ 4. After additional research, Class Counsel learned that the settlement class in fact contained more than double the original number of members—337. *Id.* ¶ 3. In light of the newly discovered settlement class size, the Settlement Administrator provided a new bid capped at $10,000. *Id.* ¶ 4. The Notice that was mailed out included the fee amount in the Settlement Administrator's revised bid. *Id.*, Ex. A at 2. Given the reasonableness of the Settlement Administrator Fee increase (60%) after the settlement class size more than doubled, the Court finds that the $10,000 Settlement Administrator Fee is reasonable.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED;

(2) Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments is GRANTED.

(3) The Court RETAINS jurisdiction over the implementation and enforcement of the Settlement Agreement until each and every act agreed to be performed by the parties

has been performed.

(4) Within 21 days after the distribution of the settlement funds, and payment of the enhancement payments, attorneys' fees and costs, the parties SHALL file a post-distribution accounting in compliance with the Northern District Procedural Guidance for Class Action Settlements.

Dated: October 20, 2021

_____
BETH LABSON FREEMAN
United States District Judge

14